No. 42,776

C. H. Elting, *Plaintiff* and *Appellee,* v. Charles Deets Pickett, *Defendant* and *Appellant.*

(372 P. 2d 261)

Opinion filed June 9, 1962.

*William C. Farmer,* of Wichita, argued the cause, and *Paul V. Smith, Douglas E. Shay, Leo R. Wetta, James R. Schaefer,* and *A. J. Focht,* all of Wichita, were with him on the briefs for the appellant.

*Laverne Morin,* of Wichita, argued the cause, and *George B. Collins, Oliver H. Hughes, Robert Martin, Kenneth W. Pringle, Jr., William F. Schell, Thomas M. Burns,* and *Robert M. Collins,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Robb, J.: This is an appeal from the judgment and orders of the trial court in favor of plaintiff and from the overruling of defendant's motion to strike findings of fact and conclusions of law, and defendant's motion for new trial.

Plaintiff's petition substantially alleged that from December 11, 1954, through January 17, 1955, defendant Pickett was vice-president of the Ashton Oil Company, Incorporated, a Kansas corporation. On December 11, 1954, defendant, acting in behalf of the corporation, offered for sale and sold to plaintiff a ⅟₃₂ working interest in two oil leases (Jabara and Harris) located in Cowley county, Kansas, for the amount of $1,750. On January 21, 1955, plaintiff received assignments of those interests executed by the president and secretary of the corporation which assignments were attached to the petition as exhibit A.

On January 10, 1955, defendant, acting in behalf of the corporation, offered for sale and sold to plaintiff a ⅟₃₂ working interest, subject to a ⅟₁₆ overriding royalty interest, in the Marrs lease, also in Cowley county, Kansas, for the sum of $2,550. On February 10, 1955, the assignment of this interest, executed the same as the Jabara and Harris leases had been, was received by plaintiff, and was attached to the petition as exhibit B.

On January 17, 1955, defendant, acting in behalf of the corporation, offered for sale and sold plaintiff a ⅟₃₂ working interest, subject to a ⅟₁₆ overriding royalty interest, in the Warren lease located in Kay county, Oklahoma. On April 27, 1955, the assignment of this lease, executed as the previous ones had been, was received by plaintiff, and was attached to the petition as exhibit C. All the leases were completed as commercial producers of oil or gas and up to the filing date of his petition (July 8, 1957) plaintiff had received as his share $766.17. Plaintiff alleged that defendant, in making the sales, was acting at the direction and with the assistance of the president and secretary of the corporation and at the time of the sales the interests in the leases were not registered as required by G. S. 1949, 17-1226, 17-1227, and 17-1228. Plaintiff, pursuant to G. S. 1949, 17-1240, tendered to the defendant the undivided ⅟₃₂ working interests in the Jabara, Harris, Marrs, and Warren leases together with all income derived therefrom. Plaintiff finally alleged defendant was liable to him for $6,300 and for court costs and reasonable attorneys' fees.

On July 11, 1957, plaintiff filed the tender of the above leases with the clerk of the district court. Defendant demurred generally to the petition, which demurrer was overruled on November 18, 1957. Plaintiff filed an amended petition by reason of motions with which we are not now concerned, but the amended petition added only that the amounts paid by plaintiff were paid to the corporation.

Defendant's answer denied that he was a stockholder, director, or officer of the corporation during the period from December 11, 1954, through January 17, 1955. He denied that he offered for sale ⅟₃₂ working interests in the Jabara and Harris leases or that he was on December 11, 1954, acting in behalf of the corporation, and having no knowledge of the assignment from the corporation to plaintiff, he denied that part of plaintiff's allegations affecting the Jabara and Harris leases. He likewise denied the same things so far as the Marrs and Warren leases were concerned. He specifically denied the other allegations of the petition except that he admitted the working interests were not registered but denied they were required to be registered by any applicable Kansas statute.

He alleged that if plaintiff was the owner of such interests, they were acquired in transactions ". . . which are specifically exempt from the applicable Kansas statutes." He further alleged that G. S. 1949, 17-1240, was void for uncertainty in its meaning and is so vague and indefinite that the court was unable to determine the legislative intent thereof. Finally, in his answer defendant restated his general demurrer that the petition failed to state facts sufficient to constitute a cause of action in favor of plaintiff and against defendant.

Plaintiff filed his reply in the form of a general denial.

Plaintiff called his first witness, Robert L. Jones, a geologist and one of the original incorporators of the corporation in 1934. He stated the purpose of the corporation was "to explore for oil." At this time defendant objected to the introduction of evidence on behalf of plaintiff because the amended petition did not state facts sufficient to constitute a cause of action against the defendant. The trial court ruled this was a demurrer to the pleadings and declared it out of order.

Plaintiff's evidence continued:

Jones testified that he made the assignments of the leases involved to plaintiff for the corporation. He first met defendant in 1954, and sometime between then and an election of officers in June or

July, 1955, defendant purchased 250 shares of the stock of the corpo-
ration and attended one of the meetings of the board of directors.
Money was obtained to drill wells by selling interests in leases and
eleven of the fifteen wells drilled were commercial producers. Jones
did not know what defendant's job was. Defendant did not have
any specific job with the corporation and had not come into the
corporation until 1955. Jones did not sell any of the interests in
the leases in question but the Jabara lease which had originally
started with him and the assigment was made by him as president
of the corporation and attested by the secretary. Defendant had
nothing to do with the assignment. To his knowledge defendant
had nothing to do with the assignment of the Marrs lease. His
testimony was approximately the same on the other two assignments
from the corporation to plaintiff.

Jones further testified that after January 2, 1955, defendant was
in Acapulco, Mexico, and that he had ". . . no knowledge
that Mr. Pickett ever accepted being on the Board of Directors for
the Corporation."

Defendant was called as plaintiff's witness and testified that he
purchased an interest in the corporation about January 21, 1955,
and kept it for a few months. He had previously testified in a
bankruptcy hearing on September 30, 1958, that he was listed as a
member of the board of directors and also as a vice-president and
that he had attended one meeting of the board of directors in
Wichita. In the counter abstract the examination in the bankruptcy
hearing was more fully reflected but nowhere in the record are there
any specific dates or any documentary evidence to show any dates,
nor is there any testimony by defendant, that he was ever part of
the management of the corporation. In fact, defendant testified that
he ". . . was never at any time directly or indirectly a part
of the management of the Ashton Oil Company."

Plaintiff next testified in his own behalf that on December 11,
1954, in Johnson county, Kansas, Doctor Ralph L. Messer told plain-
tiff about the corporation and that the defendant could tell plaintiff
if he could buy an interest in the corporation's oil and gas leases
and plaintiff had called defendant and found that he could buy
the interest in the Jabara lease. Plaintiff gave a check for $1,000 to
Messer that same night. The check was payable to the corporation
and was delivered to defendant. Plaintiff received progress re-
ports from the corporation, a commercial producing well was

brought in, and he paid $750 to the corporation for completion costs. Plaintiff received a call from defendant about the Marrs lease and on January 10, 1955, a check for $1,000 payable to the corporation, as directed by defendant, was sent to the corporation. The well was successful and he paid $750 completion costs. On January 17, 1955, defendant called plaintiff about the Warren lease and told him the cost would be $1,250. Plaintiff did not know from where defendant was calling him. On May 5, 1955, plaintiff sent a check for $750 to the corporation for a commercial producing well on the Warren lease in Oklahoma. In June, 1955, defendant called plaintiff from Kansas City and plaintiff paid $800 by check to the corporation for a second well on the Marrs lease.

On cross-examination plaintiff testified as follows:

"Dr. Messer owns some very profitable oil interests in Mississippi, and, while discussing this with him at a Christmas party in Leawood, Kansas, the subject of the Ashton Oil Company came up. I asked Dr. Messer to call Deets Pickett and he got Pickett on the telephone. I wanted to find out whether I could get in on this thing. I wanted to buy an interest."

Later plaintiff also testified:

"I first met Dr. Pickett at a meeting in the *Muelbach* Hotel where a group of individuals met to devolve some method of protecting our interest in the operation of the Ashton Oil Company. We had a number of such meetings, but I don't know the dates."

Plaintiff also testified that defendant told him by telephone that if plaintiff would bring the ⅟₃₂ interest in the Jabara lease or the Marrs lease over to his residence in Leawood, defendant had "a new Cadillac sitting on the driveway and he would trade me even." This conversation took place on June 6, 1955. It is apparent from the record that plaintiff in this conversation expressed doubt as to the advisability of investing additional money but he continued to retain his interests. At the close of plaintiff's evidence, defendant renewed his demurrer to plaintiff's amended petition for the reason it did not state a cause of action and further demurred to the evidence of plaintiff because it was insufficient to justify a recovery by the plaintiff. After lengthy argument, both demurrers were overruled and defendant proceeded to introduce his evidence.

Doctor Ralph L. Messer testified he had known plaintiff for over twenty years and he referred to the Christmas party of December 11, 1954, when the conversation between him and plaintiff had taken place which resulted in his calling defendant on the telephone at plaintiff's request. Thereafter he had taken plaintiff's check over

to defendant. Plaintiff requested him to let him know of other leases he might get and from time to time Messer and plaintiff discussed many leases. He knew defendant had been in Acapulco, Mexico, from the middle of January until April but he did not testify as to the exact dates.

Defendant, a retired veterinarian, testified that he had lived in Kansas City, Missouri, until the latter part of April, 1955. He had gone to Old Mexico about the middle of January and upon his return moved to Johnson county, Kansas. He did not recall having telephoned plaintiff but he remembered plaintiff had called him, that plaintiff was tight, and defendant suggested he sober up and talk with Doctor Messer the next day. He recalled mailing to the corporation plaintiff's check dated December 11, 1954. His only meeting with corporation officials was on January 2, 1955, when he obtained an interest in some stock of the corporation. He had never signed any acceptance as a director of the corporation and had no connection with the board of directors from December 11, 1954, to January 17, 1955. He obtained twenty-five per cent of the corporation's stock for which he traded the working interests he owned. The negotiations extended from January 2, 1955, to August 2, 1955, and were retroactive to December 1, 1954. He was never a part of the management of the corporation. He did attend one meeting of the board of directors but he did not think he was ever on the board.

Robert L. Jones testified as a defense witness in regard to plaintiff's exhibits 14 to 17, inclusive, which were the assignments executed by plaintiff to defendant of his interests in the Marrs lease, the Harris lease, the Jabara lease, and the Warren lease, respectively. Jones further testified that the Marrs lease had expired by its own terms, as had the Harris lease, that as the result of a partition suit the Jabara lease had been sold at public auction, and the Warren lease was sold as the result of a lien foreclosure.

Defendant states in his brief that at the close of all the evidence,

". . . the defendant again asked the Court to reconsider the demurrers, but the Court refused to do so and gave judgment to the plaintiff. . . ."

However, plaintiff in his brief states:

"At the close of the defendant's evidence, he did not make any motions for judgment or renew his demurrer to the evidence."

From plaintiff's counter abstract and a reply counter abstract of defendant, it is shown there was a discussion as to whether the

tender of the assignments of the leases involved from plaintiff to defendant constituted a good tender, and in argument of counsel, defendant stated:

"Our defense is we had nothing to do with the sale of the securities and if Your Honor please—if you will search the record you will see there is not a bit of evidence that Deets Pickett ever knew what interest was involved in this transaction."

The trial court then made this statement:

"Under this statute and under the evidence the plaintiff is entitled to exercise his right to declare the transactions void and to have a return of the money paid.

"Judgment, therefore, generally will be rendered in favor of the plaintiff in the case."

In substance, the trial court's findings of fact were that the Ashton Oil Company was a Kansas corporation, which had filed its articles with the secretary of state on July 20, 1954. The corporation was engaged in developing, drilling, and operating oil and gas leases in Kansas and other states. It sold certain fractional undivided interests in oil and gas leases to various persons to obtain necessary capital. In the middle of December, 1954, defendant entered into negotiations with the stockholders and representatives of the corporation concerning the purchase of 250 shares of stock (25% of the whole) which resulted in a final sale on January 2, 1955, and from that date defendant was the owner of the 250 shares. On December 11, 1954, plaintiff while attending a social function had discussed investments in oil and gas ventures with Messer and Messer had called defendant and introduced him to plaintiff.

We should here state that the remainder of the trial court's findings of fact except No. 7 were attacked by a motion to strike for the reason the findings were contrary to and not supported by competent evidence.

The trial court's findings of fact, in substance, further disclose that as a result of the conversation above mentioned, defendant offered for sale to plaintiff a $\frac{1}{32}$ working interest in two oil and gas leases (Jabara and Harris) located in Cowley county, Kansas. Plaintiff accepted and purchased a $\frac{1}{32}$ of $\frac{7}{8}$ working interest in the above leases for $1,000. That defendant was acting "as the agent and on behalf of" the corporation.

Plaintiff received assignments of the leasehold interest dated January 21, 1955, and subsequently by virtue of a test well on the Jabara lease, plaintiff paid the corporation $750 for developmental

expenses. On January 10, 1955, defendant, acting in the same capacity as found in connection with the Jabara and Harris leases, offered for sale and sold plaintiff a ⅟₃₂ of ¹⁵⁄₁₆ of ⅞ working interest in the Marrs lease for which plaintiff executed and delivered to the corporation a check for $1,000. On June 6, 1955, two additional checks for $800 and $750 for developmental expenses of two wells on the Marrs lease were sent to the corporation by plaintiff and the assignments therefrom were received by plaintiff on February 10, 1955. On January 17, 1955, defendant, acting in the same capacity, offered for sale and sold to plaintiff a ⅟₃₂ of ¹⁵⁄₁₆ of ⅞ working interest in the Warren lease for which plaintiff sent his check to the corporation in the amount of $1,250. All checks were made payable to the corporation upon the advice and direction of defendant and pursuant to telephone conversations between defendant and plaintiff with reference to the Marrs and Warren leases. On June 6, 1955, plaintiff mailed an additional check for $750 to the corporation for one well drilled on the Warren lease. The assignment was dated April 27, 1955, and was received by plaintiff.

The motion to strike did not attack the trial court's finding of fact No. 7, which reads:

"The plaintiff, C. H. Elting, received proceeds from the Jabara lease in the amount of $232.34. No income was derived by the plaintiff from the Harris lease. During the period from March, 1955 through April, 1957 inclusive, the plaintiff received the sum of $145.38, representing his proportionate share of the proceeds from the Marrs lease. In addition, plaintiff, from April, 1955 through October, 1956 inclusive, received the sum of $618.24 from the Warren lease. The total amount received by the plaintiff as his proportionate share of the proceeds of oil or gas sold from these four leases is the sum of $995.96."

Continuing with the findings attacked by the motion, the trial court found defendant sold plaintiff the Marrs and Warren interests during January, 1955, as a result of defendant's solicitations. The Jabara and Harris sales during December, 1954, had resulted from plaintiff's inquiry. Defendant was listed as a director and also vice-president of the corporation from January 2, 1955, to August 2, 1955, he attended board of directors' meetings in Winfield, Kansas, and also in Wichita pursuant to notices received by him of such meetings. Subsequent to August 2, 1955, the management of the corporation was changed and shortly thereafter the corporation was adjudged bankrupt and is no longer in existence. Plaintiff tendered to defendant assignments of his interests in the above described oil

and gas leases together with the sum of $995.96 representing proceeds received therefrom by plaintiff. Finally, the trial court found plaintiff was entitled to $550 reasonable attorney fees.

The trial court's conclusions of law were that it had jurisdiction of the parties and the subject matter. The assignments in question were securities under the provisions of G. S. 1949, 17-1223 (3), and were not exempt securities or transactions under G. S. 1949, 17-1224, 17-1225.

The following conclusions of law also were attacked by defendant's above-mentioned motion to strike:

The defendant in aiding and participating in the sales to plaintiff *was acting on behalf of and as agent for the corporation.* Suit had been timely brought under G. S. 1949, 17-1240, and defendant had failed to prove plaintiff was estopped to prosecute the action. Plaintiff made due tender to defendant of his interests in the securities and the income received by him. Judgment was granted generally in favor of plaintiff in the amount of $5,304.04 with interest at six per cent from June 6, 1955, $550 attorney fees, and costs.

Along with the motion to strike, defendant filed his motion for new trial. In its journal entry of judgment the trial court entered judgment for plaintiff for a total of $7,800.62.

In support of his motion for new trial, defendant presented the testimony of certain witnesses along with affidavits made by other witnesses. He called the court's attention to the fact that plaintiff's exhibit 1 (the corporation's annual report for year 1954 filed with secretary of state but not certified) was the only direct evidence offered by plaintiff in support of the allegations of his petition that defendant was a director, officer, or stockholder of the corporation during the period charged and no allegation had been made that plaintiff was an agent, to which statement the trial court replied:

"Well, this judgment was not based primarily on his having been an officer of the corporation. It was based on agency and procuring the sale."

During the course of the hearing on defendant's motion for new trial, plaintiff moved to amend his petition to conform to the facts which motion was sustained by the trial court over defense objection. The amendment alleged that the transactions took place in the state of Kansas and that defendant was an agent of the corporation in making the sales instead of acting as an officer or director thereof.

The presentation of the motion for new trial was commenced on

August 14, 1961, and on August 15, 1961, upon completion thereof, the trial court overruled the motion to strike and motion for new trial, sustained plaintiff's objections to exhibits and proffer of evidence on the motion for new trial, and finally reduced its previous judgment by the sum of $2,000 making a total judgment of $5,800.62. Hence this appeal by defendant.

This case presents an unusual situation and none of the authorities presented by the parties or found by the court covers such an exact situation as to answer the questions. G. S. 1949, 17-1223 (3), in pertinent part provides as follows:

"'Security' shall mean and include any . . . contract or instrument whatsoever, representing or constituting evidence of . . . any oil, gas or mining lease, royalty, or mineral deed, or in any property represented to contain or to be a prospect for oil, gas or minerals, and any interest units, or shares in any such lease, royalty or deed. . . ."

Due to the allegation in the answer of the defendant that the alleged transactions were specifically exempt under our statutes, which he was required to plead under *Zehring v. Foster*, 184 Kan. 599, 603, 339 P. 2d 331, certain provisions of G. S. 1949, 17-1225, became an issue and in pertinent part the statute reads:

"The provisions of this act, except as herein expressly provided, shall not apply to sales of the following character:

"(1) Any isolated sale of any security by the owner thereof, or by a representative for the account of such owner, such sale not being made in the course of repeated and successive sales of securities of the same issue by such owner or by such representative for the account of such owner.

. . . . . . . . . . . . . . . . . .

"(8) Any undivided interest or certificates based upon undivided interest in all royalties, oil leases, or mineral deeds, where the interests or certificate, based upon such interest offered for sale or sold to any purchaser, is more than one twenty-fifth of the whole royalty, oil lease, or mineral deed. . . ."

The trial court in its conclusions of law held that the transactions in question were not exempt securities or transactions and specifically referred to 17-1225. However, in its finding of fact No. 7 it set up three separate and distinct sales of oil and gas leases in Cowley county, Kansas, and another one in Kay county, Oklahoma. In finding of fact No. 7, above quoted, the proceeds received by plaintiff from the three productive leases were specifically set out for each lease together with the dates they were received.

Since the $\frac{1}{32}$ interests here involved are less than the $\frac{1}{25}$ interest excluded by provision (8) of 17-1225 and that exemption does not apply, we shall next consider the proposition as to whether the trans-

actions in question are exempt under 17-1225 (1) relating to isolated transactions. In our opinion the legislature intended to exempt just such transactions as those with which we are presently concerned and under the particular facts and the findings of the trial court, we believe these sales were not sales made in the course of repeated and successive sales of securities of the same issue, and in view of all that has been stated heretofore, under the particular provision of the statute herein quoted, we are constrained to hold the transactions were exempt isolated transactions under 17-1225 (1) and for that reason the trial court erred in the conclusion of law that they were not such exempt transactions. In connection herewith see *State v. Harper*, 137 Kan. 695, 696, 22 P. 2d 454; and 2 Williams and Meyers on Oil and Gas, § 441.4 (*b*) (*c*), pp. 547-550 (1959), wherein may be found an informative discussion as to statutory provisions in other jurisdictions pertaining to the subject of isolated sales as exempt transactions.

Other specifications of error, arguments in regard thereto, and authorities cited have not been overlooked but in view of our conclusion, they need not be discussed herein.

The judgment is reversed with directions to the trial court to enter judgment for the defendant.

ROBB, J. (concurring specially): I concur in the opinion of the majority but would add that under the undisputed testimony defendant gave plaintiff an opportunity for rescission of the contract in January, 1955, when he offered his new Cadillac to plaintiff in an even trade for the leases then held by plaintiff, but plaintiff failed and refused to accept this offer. He retained the leases, continued to send checks for completion costs on commercial producing wells, and accepted income from the production of such wells until the leases became valueless—by their own terms, by sales as a result of a judgment in a lien foreclosure, and by a partition suit. His assignments of leases purporting to be the same leases he had acquired could not constitute a good and sufficient tender (G. S. 1949, 17-1240) and he was estopped from relying upon violation of the Kansas Securities Act as a cause of action to recover back the amount of money he had originally paid for such securities, or assignments. (*Wichita Duntile Co. v. Wright*, 130 Kan. 139, 141, 285 Pac. 635.)

I further believe that the result of the offer by defendant to trade his Cadillac for the leases, which plaintiff turned down, was ratifi-

cation in view of the following statement made in *Weber v. Home Royalty Ass'n*, 149 Kan. 678, 88 P. 2d 1053:

"We have repeatedly said the sale of speculative securities without a permit or license was not *malum in se*, but only *malum prohibitum*, and hence capable of being ratified." (pp. 682-683.)

In my opinion the Kansas Securities Act was never intended to permit a person to proceed in the way plaintiff proceeded in this case, to ratify the transactions, and then to say, "King's X, I want out!"

WERTZ, J., joins in the foregoing specially concurring opinion.