Douglas D. GETTER et al.,
Plaintiffs,

v.

R. G. DICKINSON & CO. et al.,
Defendants.

R. G. DICKINSON & CO. et al.,
Third-Party Plaintiffs,

v.

AUDIO COMMUNICATIONS, INC., et al.,
Third-Party Defendants.

Civ. No. 11–309–C–2.

United States District Court,
S. D. Iowa, C. D.

Sept. 28, 1973.

Dwight W. James, L. Call Dickinson, Jr., John R. Mackaman, Des Moines, Iowa, for plaintiffs.

Richard G. Santi, A. Arthur Davis, Donald A. Wine, Thoma, Schoenthal, Davis, Hockenberg & Wine, Des Moines, Iowa, for defendants and third-party plaintiffs.

Herschel G. Langdon, Richard G. Langdon, Herrick, Langdon, Belin & Harris, Des Moines, Iowa, Reginald Leo Duff, Carro, Spanbock & Londin, New York City, for third-party defendant, Glenn M. Feit.

William B. McDonald, Richard R. Chabot, Austin, McDonald, Myers & Peterson, Des Moines, Iowa, Franklin Poul, Judith R. Cohn, Wolf, Block, Schorr & Solis, Philadelphia, Pa., for third-party defendants, Tait, Weller & Baker and Arnold N. Parris.

Eugene Davis, Des Moines, Iowa, for third-party defendants, E. Michael Daspin and Robert A. Glick.

David Brodsky, Des Moines, Iowa, Sheldon I. Saitlin, Simpson & Shefsky, Chicago, Ill., for third-party defendant, William R. Bowler.

James E. Cooney, Des Moines, Iowa, for third-party defendant, Paul A. Zamarra.

## MEMORANDUM AND ORDER

HANSON, Chief Judge.

This Order is predicated upon (1) the Motions to Quash Service of Process and to Dismiss the Third-Party Complaint filed by Third-Party Defendant Glenn M. Feit on July 27, 1972 and Glenn M. Feit's Amendment to his Motions to Quash Service of Process and to Dismiss the Third-Party Complaint filed on July 31, 1972; (2) the Motion to Dismiss for Lack of Venue and Jurisdiction of the Person filed by Third-Party Defendants E. Michael Daspin and Robert A. Glick on August 11, 1972; (3) the Motions to Quash Service of Process and to Dismiss the Third-Party Complaint filed by William R. Bowler on August 15, 1972; (4) the Motion of Third-Party Defendants, Tait, Weller and Baker and Arnold N. Parris to Dismiss the Third-Party Complaint filed on August 11, 1972; and (5) the Motion of Third-Party Defendant Paul A. Zamarra to Dismiss Third-Party Complaint filed on September 8, 1972. The Court notes that a resistance has been filed to these motions and that replies to this resistance have been forthcoming.

Plaintiffs in the original suit are certain purchasers of common stock of Audio Communications, Inc. The defendant and third-party plaintiff R. G. Dickinson & Co. was the vendor-broker, and the remaining defendants and third-party plaintiffs are officers and employees of Dickinson. The third-party defendants are Audio Communications, Inc. whose stock was offered to the plaintiffs in the transaction which is the subject of the original complaint and certain officers and directors of Audio Communications, Inc. The accounting firm of Tait, Weller and Baker which prepared accounting statements of Audio Communications, Inc. and a member of that firm, Arnold N. Parris are also included as third-party defendants.

The underlying action was brought pursuant to Section 22 of the Securities Act of 1933 (15 U.S.C., Section 77v), Section 27 of the Securities Act of 1934 (15 U.S.C., Section 78aa), and Ch. 502 of the Code of Iowa, under pendent jurisdiction. The original complaint is in three counts, the first two alleging an offer and sale of securities without a registration statement, an election to rescind accordingly, and a tender of the securities under Section 12(1) of the Securities Act and Ch. 502 of the Code of Iowa in respective counts. The third count alleges deceit in violation of Section 12(2) and Section 17(a) of the Securities Act of 1933, and in violation of the Securities Exchange Act of 1934, Section 10(b) and Rule 10b-5 thereunder, and Section 15(c)(1) and Rule 15c 1-2 thereunder.

The Third-Party Complaint in seven counts alleges that any acts, omissions, or misrepresentations to the plaintiffs by the defendants (third-party plaintiffs) were the direct result of fraudulent acts, omissions, and misrepresentations made by third-party defendants to third-party plaintiffs. Count I is based upon fraud and misrepresentations and seeks indemnity or contribution from all third-party defendants for any amount adjudged against the third-party plaintiffs in favor of the plaintiffs. Count II alleges that negligence of the third-party defendants resulted in the acts, omissions and misrepresentations of the third-party plaintiffs and seeks contribution and indemnity from all third-party defendants. Count III alleges breach of duty from a principle to its agent and seeks contribution and indemnity from all third-party defendants except Tait, Weller & Baker and Arnold Parris. Count IV is based upon Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C., Section 78j(b)) and alleges fraud and deceit and misrepresentation in connection with the placement for sale and the sale of Audio stock. This count also seeks contribution and indemnity from all third-party defendants. Count V alleges that Tait, Weller & Baker and Ar-

nold Parris failed to use due care and breached said duty in the preparation of accounting statements for Audio Communications, Inc. This count seeks contribution and indemnity only from Tait, Weller & Baker and Arnold Parris. Count VI alleges that third-party defendants breached their duty to the plaintiffs under the purchase agreements for Audio stock and that third-party plaintiffs are third-party beneficiaries of that agreement. Contribution and indemnity are sought against all third-party defendants except the accounting defendants. Count VII is asserted against only Glenn M. Feit and alleges fraud or negligence in the issuance of a legal opinion concerning the particular stock transaction involved in this suit. This count seeks contribution or indemnity with respect to all sums that may be adjudged against third-party plaintiffs in favor of plaintiffs.

The Court has spent a considerable length of time reviewing lengthy motions, briefs, and affidavits filed relating to the above motions. The Court has also reviewed the case authority cited by the parties and some more recent cases decided since these briefs were filed. Essentially identical issues are involved in each of the motions to dismiss or to quash service filed by the third-party defendants. Therefore, the Court consolidates these motions for purposes of this ruling.

The above motions basically contend that there is a failure to state a claim for which relief may be granted, lack of subject matter jurisdiction, improper venue, and lack of personal jurisdiction over the individual third-party defendants. For these reasons the Court is asked to dismiss the third-party complaint.

This Court must determine whether this is a proper forum to hear the third-party complaint or whether the third-party complaint may be heard in any forum. The Court must also eventually determine whether this third-party cause of action should be transferred to New Jersey.

## I.

■ The first issue involves only Count IV of the Third-Party Complaint where the third-party defendants allege that R. G. Dickinson and Company and other third-party plaintiffs do not have standing to sue because they are not a "seller or purchaser" of securities. Birnbaum v. Newport Steel Corporation, 193 F.2d 461 (2d Cir. 1952), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L. Ed. 1356 (1952) is cited for the proposition that a cause of action based upon Rule 10b–5, 17 C.F.R., Section 240.106–5 and Section 10(b) of the Securities Exchange Act of 1934 (Title 15 U.S.C., Section 78j(b)) must be prosecuted by a plaintiff who is a "seller or purchaser" of securities. The third-party defendants contend that the third-party plaintiffs are not "sellers or purchasers" within the scope of the *Birnbaum* doctrine and the following cases: Greater Iowa Corp. v. McLendon, 378 F.2d 783, 790–791 (8th Cir. 1967); City Nat'l. Bank v. Vanderboom, 422 F.2d 221, 228–229 (8th Cir. 1970); Vanderboom v. Sexton, 422 F.2d 1233, 1243 (8th Cir. 1970); Erling v. Powell, 298 F.Supp. 1154, 1156 (D.S.D.1969), aff'd., 429 F.2d 795, 797–799 (8th Cir. 1970); Greenstein v. Paul, 400 F.2d 580, 581 (2d Cir. 1968); Iroquois Industries, Inc. v. Syracuse China Corp., 417 F.2d 963, 966 (2d Cir. 1969), cert. denied, 399 U.S. 909, 90 S.Ct. 2199, 26 L.Ed.2d 561 (1970); Kahan v. Rosenstiel, 424 F.2d 161, 173 (3d Cir. 1970); Landy v. F. D. I. C., 486 F. 2d 139 (3d Cir. 1973); Rekant v. Desser, 425 F.2d 872, 877 (5th Cir. 1970); Herpich v. Wallace, 430 F.2d 792, 804–805 (5th Cir. 1970); Levine v. Seilon, 439 F.2d 328, 329 (2d Cir. 1971); GAF Corp. v. Milstein, 453 F.2d 709, 721–722 (2d Cir. 1971); Drachman v. Harvey, 453 F.2d 722, 731 (panel), 738 (en banc) (2d Cir. 1972). The *Birnbaum* doctrine was most recently discussed by the Eighth Circuit in Travis v. Anthes Imperial Limited, 473 F.2d 515 (8th Cir. 1973):

"We have followed other courts in holding that the quoted phrase (of the

S.E.C. Act) generally limits standing to those who are defrauded 'purchasers' or 'sellers' of securities, and to limit the coverage of the statute and rule to fraudulent practices in connection with the 'purchase' or 'sale' of securities."

The third-party plaintiffs do not claim that the "purchaser-seller" requirement to assume standing to sue is not applicable in this case. They assert instead that they should fall within the "purchaser-seller" category of *Birnbaum* and its progeny. It is contended that a line of cases following *Birnbaum* utilize a "broad brush" approach in characterizing persons as buyers or sellers of securities and that the third-party plaintiffs fall within this expanded classification. In other words, plaintiffs who might not fit a definition of purchaser or seller in the strict sense of the words would fall within the "purchaser or seller" requirement of *Birnbaum* under a broadened definition. The following "broad brush" cases were cited in Erling v. Powell, 429 F.2d 795, 798 (8th Cir. 1970); Crane Company v. Westinghouse Air Brake Company, 419 F.2d 787 (2d Cir. 1969) (tender offerer frustrated by defendant's market manipulations entitled to standing.); Vine v. Beneficial Finance Company, 374 F.2d 627 (2d Cir. 1967), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967) (minority shareholders of corporation required to sell at specified price by fraudulent tender offer creating "short-form merger" qualify as "forced sellers"); A. T. Brod & Co. v. Perlow, 375 F.2d 393 (2d Cir. 1967) (stockbroker, victimized by customer's deceptive plan to order but not pay for securities in case of a bear market, qualifies for Rule 10(b)–5 relief as a non-investor forced to purchase securities); Ruckle v. Roto American Corp., 339 F.2d 24 (2d Cir. 1964) (corporation's issuance of shares of stock qualifies it as seller); Kahan v. Rosenstiel, 424 F.2d 161, 173 (3rd Cir. 1970) (suit for recovery of attorney fees in prosecuting a 10(b) suit); Britt v. Cyril

Bath Company, 417 F.2d 433, 436 (6th Cir. 1969); Mutual Shares Corporation v. Genesco, Inc., 384 F.2d 540 (2d Cir. 1967).

The case cited by the third-party plaintiffs as analogous to the present set of facts in applying a broad brush approach to the "purchaser-seller" requirement is A. T. Brod & Co. v. Perlow, *supra* at 396–397. In that case, Brod was a stockbroker with whom the Perlows had placed an order for securities. When the securities were tendered to the Perlows, they refused to pay and Brod was forced to sell the securities at a substantial loss. The Court found Brod to be a "forced purchaser" because of the actions of the defendant in refusing to buy the securities after ordering them. The Court held that this "forced" purchaser status was sufficient to give Brod standing to sue for 10(b)–5 relief. The third-party plaintiffs in this case assert that they would also be "forced" purchasers of securities if the plaintiffs are successful in the main action in that the defendants would have to pay the plaintiffs the purchase price of the securities. This obligation to pay for the securities would have arisen out of the same set of facts that gave rise to the third-party complaint. If this Court were to hold that this was sufficient to give standing to the third-party plaintiffs, this might be a relaxation of the standing requirement imposed by *Birnbaum* and prior Eighth Circuit authority.

The Eighth Circuit in Travis v. Anthes Imperial Limited, *supra*, 473 F.2d at 521 declined to abandon the "purchaser or seller" requirement as they were encouraged to do so by the Securities Exchange Commission in an amicus brief. The Eighth Circuit also found it unnecessary to relax the standing requirement "because the plaintiffs did in fact sell securities to the defendants." Even though the Eighth Circuit did not modify the standing requirement in that case, a footnote gave some insight of the

Circuit view of this "purchaser or seller" requirement.

"9. The Securities Exchange Commission, in an amicus brief, has asked us to abandon the 'purchaser or seller' requirement. We decline to do so here, but emphasize that the Securities Exchange Act of 1934 is remedial legislation which should be construed broadly to effectuate its purpose, Tcherepnin v. Knight, 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967), and that '10(b) must be read flexibly, not technically and restrictively.'" Sup't. of Insurance v. Bankers Life & Cas. Co. [404 U.S. 6, 92 S. Ct. 165, 30 L.Ed.2d 128 (1971)] Travis v. Anthes Imperial Limited, *supra*, 473 F.2d at 521.

It appears to this Court that the Eighth Circuit, when appropriate cases are presented, intends to follow those Circuits which take a broadened approach to the standing requirement of *Birnbaum* and its progeny.

A reading of the statute itself and the way "in connection with the purchase or sale of any security" appears gives ample insight into the purpose of the statute.

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange

\* \* \* \* \* \*

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 48 Stat. 891 (1934), 15 U.S.C., Section 78j(b).

The supplementary rule states:

"It shall be unlawful for any person, directly or indirectly by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R., Section 240.10(b)(5).

In the case at hand there was a sale and purchase of securities in which the third-party plaintiffs were major participants although the "actual" purchase agreement was between Audio Communications, Inc., E. Michael Daspin, and Joseph C. Jamieson and the individual plaintiffs. The third-party complaint arose specifically because of this purchase and sale of securities. The third-party plaintiffs were sued in the main complaint because of problems surrounding the sale of securities and the plaintiffs may have a right to rescind their purchase and recover the purchase price from the third-party plaintiffs if liability is found upon the complaint. The third-party plaintiffs may become "forced" purchasers of the stock if they are found to be liable on the main complaint. It would take a technical and restrictive reading of the above statute to say that the third-party plaintiffs do not have standing to sue either on a "forced" purchaser rationale or on other grounds under the facts in this case.

The third-party plaintiffs have also asserted that they should have standing under commonly accepted rules of agency. They assert that they should be able to rely upon the status of their principal and assume his status to sue as either a

"purchaser or a seller." Given their involvement in this securities transaction, there is no doubt that the third-party plaintiffs must be considered either an agent of the purchasers or the sellers of the securities involved in these transactions.

In giving a broad and flexible interpretation to the "purchaser or seller" requirement such as to effectuate the purposes of the Securities and Exchange Act of 1934,[1] this Court finds that the "seller or purchaser" requirement of *Birnbaum* and its progeny is satisfied and that the third-party plaintiffs have standing to sue in this action. This standing to sue is derived from their position as possible "forced purchasers" and their position as agent of either the sellers or purchasers.

## II.

The second issue involves the problem of service of process upon the "accounting" third-party defendants, Arnold N. Parris and Tait, Weller and Baker, as it relates to their claim that the Marshal only left copies with the Secretary at the Office of Tait, Weller and Baker and that this was insufficient service to confer personal jurisdiction of this Court over these third-party defendants themselves. The third-party plaintiffs have since re-served these third-party defendants by personal service upon Arnold N. Parris, who is a partner in Tait, Weller and Baker. The Court deems the second service of process by the Marshal on March 6, 1973 to be sufficient to moot this portion of the Motion to Dismiss the Third-Party Complaint.

## III.

The third issue is the contention that the Court has no personal jurisdiction over the third-party defendants as it relates to Counts I, II, III, V, VI and VII for the reason that the third-party de-

fendants were served pursuant to the provisions of Section 27 of the Securities Exchange Act of 1934. The third-party defendants allege that service under this Act confers personal jurisdiction only to the count which is based upon the Securities Exchange Act, to-wit: Count IV of the Third-Party Complaint. The third-party defendants allege that although the Court may have pendent subject matter jurisdiction of the other counts which are based upon a State cause of action, the Court does not have pendent *personal* jurisdiction.

There are two lines of authority dealing with the question of *personal* jurisdiction. One line of cases upholds the third-party defendants' contention that Federal Rule of Civil Procedure 4, which normally determines where defendants may be served, is controlling as it relates to the common law on state causes of action. Trussel v. United Underwriters, Ltd., 236 F.Supp. 801 (D.Colo. 1964); Wilensky v. Standard Beryllium Corp., 228 F.Supp. 703 (D.Mass.1964); International Ladies Garment Workers' Union v. Shields & Company, 209 F. Supp. 145 (S.D.N.Y.1962); Lasch v. Antkies, 161 F.Supp. 851 (E.D.Pa.1958). The cases state that while Congress might have the power to allow extraterritorial service of process with respect to the pendent state claims, it has not done so. The third-party defendants claim that the reach of this extraterritorial service of process must be defined by statute.

A contrary line of cases state that the same considerations which justify pendent subject matter jurisdiction also justify pendent personal jurisdiction. Schwartz v. Eaton, 264 F.2d 195 (2nd Cir. 1959); Kane v. Central American Mining & Oil, Inc., 235 F.Supp. 559 (S. D.N.Y.1964); Cooper v. North Jersey Trust Co., 226 F.Supp. 972 (S.D.N.Y. 1964); Townsend Corporation of Ameri-

---

1. The need to take a flexible approach to the Securities Exchange Act of 1934 is noted in Travis v. Anthes Imperial Limited, 473 F.2d 515 (8th Cir. 1973); Tcherepnin v. Knight,

389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967); Sup't. of Insurance v. Bankers Life Cas. Co., 404 U.S. 6, 12, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971).

ca v. Davidson, 222 F.Supp. 1 (D.N.J. 1963); Lyons v. Marrud, Inc., 46 F.R.D. 451 (S.D.N.Y.1968); Sprayregon v. Livingston Oil Co., 295 F.Supp. 1376 (S.D. N.Y.1968).

██ This Court has been cited no authority from the Eighth Circuit Court of Appeals on the point of pendent personal jurisdiction and the Court is aware of none at the present time. Given this apparent absence of authority in this Circuit, this Court feels as does Professor Moore that the better rule of law is that pendent personal jurisdiction should be allowed in a case where pendent subject matter jurisdiction is justified.

. . . [O]nce a court has properly acquired jurisdiction over a person under such a [federal] statute, issues which are ancillary or pendent to the claim which provided the statutory basis for service should be heard. Moore's Federal Practice Par. 4.42 [1] at p. 1293.12.

██ The fourth issue confronting the Court is the contention of Tait, Weller and Baker and Arnold N. Parris that they have not had sufficient contact with Iowa to justify *in personam* jurisdiction of this Court via extraterritorial service of process. Travis v. Anthes Imperial Limited, *supra*, at 473 F.2d 529 has stated that Congress intended Section 27 of the Securities Exchange Act to extend jurisdiction via extraterritorial service of process to the full extent permitted by the Due Process Clause of the United States Constitution. The inquiry of the Court must therefore be directed to ascertaining whether there were sufficient contacts with Iowa by Tait, Weller and Baker and Arnold N. Parris to warrant submitting these parties to the jurisdiction of this Court.

The recent case of R. H. Fulton v. Chicago, Rock Island and Pacific Railroad, 481 F.2d 326 (8th Cir. 1973) reviewed the now familiar principles of the three leading Supreme Court cases, Hanson v. Denckla, 357 U.S. 235, 78 S. Ct. 1228, 2 L.Ed.2d 1283 (1958); McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

*International Shoe* stated:

"[D]ue process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316, 66 S.Ct. at 158.

As stated in R. H. Fulton, *supra*:

"The Court [International Shoe] also held the minimum contacts 'criteria . . . cannot be simply mechanical or quantitive, . . . [but] must depend rather upon the quality and nature of the activity . . .' *Id.* at 319, 66 S.Ct. at 160. Accordingly, the Court said,

" 'the commission of some single or occasional acts of the corporate agent in a state sufficient to impose an obligation or liability on the corporation, . . . because of their nature and quality and the circumstances of their commission, may be deemed sufficient to render the corporation liable to suit.' "

In accordance with the principles outlined in *Fulton, supra, Travis, supra,* 473 F.2d at 529–530, and Leasco Data Processing Equipment Corp. v. Isidore Kerman, 468 F.2d 1326, 1337–1344 (2d Cir. 1972), this Court must determine whether the accounting third-party defendants should be subjected to the jurisdiction of this Court.

In the situation of the accounting third-party defendants we have two contacts with Iowa. First is the fact that the financials prepared by the accounting third-party defendants traveled to Iowa. Second, we have the visit of Arnold N. Parris to Iowa at a later date in connection with the financials and the public offering.

The *Leasco* case considered whether the traveling of accounting reports to a particular jurisdiction would confer jurisdiction upon the Courts of that jurisdiction. Judge Friendly stated:

> At minimum the conduct must meet the tests laid down in § 18 of the Restatement (Second) of Foreign Relations Law, including the important requirement that the effect "occurs as a direct and foreseeable result of the conduct outside the territory." We believe, moreover, that attaining the rather low floor of *foreseeability* necessary to support a finding of tort liability is not enough to support *in personam* jurisdiction. The person sought to be charged must know, or have good reason to know, that his conduct will have effects in the state seeking to assert jurisdiction over him. 468 F.2d at 1341. (Emphasis added.)

The substantiality of the contact and the foreseeability of the impact in Iowa of acts outside of this state are most relevant to determining whether this Court should assume jurisdiction.

If the financial reports traveling into Iowa were the only contact with this state by the accountants, this Court may have been compelled to reach the same conclusion as reached by Judge Friendly in *Leasco* and Judge Stuart in Continental Western Industries, Inc. v. L. Handelsman and Company, Civil No. 72–237–1, S.D.Ia., March 14, 1973, to-wit: That the accountants could not be sued in the district in which the only contact was the fact that the financials eventually came to this district. In the present case, however, the additional contact with this state from the trip to Iowa by Mr. Parris in connection with the disputed financial reports, combined with the fact of these financials entering Iowa is sufficient to allow this Court to exercise *in personam* jurisdiction over the accounting defendants through extra-territorial service of process.

## V.

■ The third-party defendants, E. Michael Daspin, Robert A. Glick, William R. Bowler, Paul A. Zamarra, Arnold N. Parris and Tait, Weller, and Baker also assert that venue is not proper under Section 27 of the Securities Exchange Act of 1934. They state that in order for venue to be proper under Count IV of the third-party complaint, they must either (1) be residents of Iowa, (2) be found in Iowa, (3) transact business in Iowa, or (4) commit any act or transaction in Iowa constituting a violation of the Securities Act. These third-party defendants allege that they have done nothing that would put them in any of the above categories.

The Court has already addressed this question with regard to the accounting third-party defendants and has found that they are properly within the jurisdiction of the Court given that Section 27 of the Securities Act of 1934 is intended to extend venue and personal jurisdiction to the extent permitted by "due process" considerations.

The Court also finds there are sufficient contacts with Iowa to give proper venue and jurisdiction over Daspin, Glick, Bowler, and Zamarra, given their positions in ACI and the contacts of ACI to Iowa through the activities of Feit and the third-party plaintiffs who were agents of the third-party defendants in the sale of these securities. The third-party plaintiffs allege that they sold securities in Iowa as agents of the third-party defendants. The Court believes that this and other contacts with Iowa noted in the third-party plaintiffs' Supplemental Brief and Argument in Resistance to third-party defendants' Motions to Dismiss/Quash, are sufficient to establish venue in Iowa over these third-party defendants.

## VI.

The sixth issue is the contention of the third-party defendants that contribution and indemnity are not available

to the third-party plaintiffs in a suit such as the one at hand. It is alleged that because of the unavailability of contribution and indemnity the third-party complaint must thus be dismissed for failure to state a claim upon which relief may be granted.

To support the contention that indemnity is not available, the third-party defendants cite Globus v. Law Research Service, Inc., 287 F.Supp. 188 (S.D.N.Y. 1968), aff'd in part and rev'd in part, 418 F.2d 1276 (2d Cir. 1969), cert. denied, 397 U.S. 913, 90 S.Ct. 913, 25 L. Ed.2d 93 (1970). In *Globus I* cited above, Judge Mansfield did not allow indemnity under an indemnity agreement where the jury necessarily found in light of the judge's instructions, that the defendant seeking indemnity had *actual* knowledge of material misrepresentations. Judge Mansfield's ruling was based upon his conclusion that, "it would be against the public policy embodied in the federal securities legislation to permit Blair & Co. . . . to enforce its indemnification agreement." The Second Circuit concurred with Judge Mansfield's ruling stating, "that to tolerate indemnity under these circumstances would encourage flouting the policy of the common law and the Securities Act." 418 F.2d at 1288.

The Second Circuit, however, cautioned, "that at this time we consider only the case where the underwriter has committed a sin graver than ordinary negligence." The Court left open the question as to whether indemnity would be available in the case where only "ordinary negligence" was involved. Given the responsibilities that the Securities Act seeks to enforce against underwriters, it may be that indemnity should not be allowed even in the case of "ordinary negligence." This is a matter that the Court will determine when the relevant factual matter and authority are before the Court, although it appears that the third-party plaintiffs have a burden to bear to prove they are entitled to indemnity under the factual situation as it appears at the present time.

The third-party defendants also cite a series of New York cases, Iowa cases and the case referred to as *Globus II*, Globus v. Law Research Service, Inc., 318 F.Supp. 955 (S.D.N.Y.1970), aff'd 442 F.2d 1346 (2d Cir. 1971) for the proposition that a third-party defendant may not be sued under a federal securities law for contribution. This contention is based upon the assertion that if the third-party defendants are not joined as defendants, they cannot be held as joint-tortfeasors and thus cannot be held liable for contribution. It is true that *Globus II* held that contribution can only be between joint-tortfeasors. *Globus II* however did *not* say the determination as to whether they were joint-tortfeasors could be made only in the main action and not by a third-party action.

The rationale underlying *Globus I* where the Court held that the intentional tortfeasor should not be allowed to indemnify himself for his own violation of the Securities Act is equally applicable to this contribution situation. A joint-tortfeasor should not be allowed to escape liability under the Securities Act by the fortuitous circumstance that he was not sued in the main cause of action. If he is a joint-tortfeasor, he should be held to contribution to facilitate enforcement of the obligations imposed by the Securities Act.

The third-party defendants are correct that the cause of action for indemnity and contribution pleaded in the third-party complaint must be related to the cause of action pleaded in the complaint against the third-party plaintiffs. The Court has carefully compared the complaint and the third-party complaint to determine the "common" ground upon which contribution or indemnity could be supported.

The Court concludes that there is a sufficient *possible* relationship between the third-party complaint and the allegations of the complaint such that the third-party complaint cannot be disposed of in a motion to dismiss. The Court

will of course peruse carefully any motion for summary judgment that might be filed that is properly supported by affidavits.

## VII.

The Court also has contained within the various motions to dismiss a motion to separate the third-party complaint from the main cause of action and a motion to transfer this cause of action to the United States District Court for the District of New Jersey. The third-party defendants, Daspin and Glick, state the following grounds for this transfer:

(1) Audio Communications, Inc. is a New Jersey corporation now in receivership in Federal Court in New Jersey;

(2) These moving third-party defendants are and have been for many years inhabitants of New Jersey, and all of the other third-party defendants are residents of New Jersey or nearby eastern locations;

(3) These moving third-party defendants did not offer for sale or sell to the third-party plaintiffs any securities within the State of Iowa, and all material elements of the entire transaction took place outside of the State of Iowa, either in the State of New Jersey or in New York City;

(4) Such separation and transfer will best serve (a) the convenience of the parties, (b) the convenience of the witnesses, (c) the relative ease of access to sources of proof, (d) the availability of process to compel attendance of unwilling witnesses, (e) the cost of obtaining willing witnesses, (f) the practical problems indicating where the case can be tried more expeditiously and inexpensively, and (g) the interest of justice.

The Court has given this motion for transfer careful consideration and declines to rule upon this motion at this time. There may be a time in these proceedings in which a transfer would expedite these proceedings. At this time, the Court will ask counsel for all parties to indicate to the Court their views as to the desirability of a transfer to the District of New Jersey.

In accordance with the foregoing, it is hereby ordered that the motions of the third-party defendants discussed in this Memorandum are overruled in their entirety.

On Motion for Summary Judgment

This order is predicated upon the Motion for Summary Judgment filed February 6, 1973 by certain plaintiffs on Count II of the Complaint. The plaintiffs are certain purchasers of common stock of Audio Communications, Inc. The defendant and third-party plaintiff, R. G. Dickinson & Co. was a vendor-broker, and the remaining defendants and third-party plaintiffs are officers and employees of Dickinson. The Complaint is in three Counts, the first two alleging an offer and sale of securities without a registration statement, and election to rescind accordingly, and a tender of securities under Section 12(1) of the Securities Act and Ch. 502 of the Code of Iowa in respective Counts. The third Count alleges fraud and deceit and misrepresentation in violation of Section 12(2) and Section 17(a) of the Securities Act of 1933, and in violation of the Securities Exchange Act of 1934, Section 10(b) and Rule 10b–5 thereunder, and Section 15(c)(1) and Rule 15c1–2 thereunder. A Third-Party Complaint in seven counts seeks indemnity and contribution from certain third-party defendants.

The Motion for Summary Judgment that is before the Court at the present time seeks summary judgment only on Count II of the original Complaint. This Count is based upon the Iowa Securities Act in Ch. 502 of the Code of Iowa. The plaintiffs allege that at the time of the offer and sale of the Audio securities by the defendants to the plaintiffs, the Audio securities were not reg-

istered as required by Ch. 502 of the Code of Iowa.[1] The plaintiff's have elected to rescind the purchase of the Audio securities and to tender such securities to the defendants pursuant to Section 502.23 of the Code of Iowa.[2]

Division I of the Motion asks summary judgment for the "individual" plaintiffs, Vincent E. Johnson, Susan Johnson, Floyd Martin, Ruth Martin, Irv E. Cantor, Roy Kay and Darlene Mary Kay. Division II of the Motion for Summary Judgment asks summary judgment for the "corporate" plaintiffs, Douglas Getter, Nathaniel I. Koren, Marlin A. Camin, William E. Metcalfe, Wayne Jesse Watkins, Hurl U. Knight, Richard A. Romp, James H. Bassman and Al M. Schneider. The reason that this motion has been separated into two Divisions appears to be because the plaintiffs in Division II formed corporations in connection with the purchase of the stock involved in this transaction, while the plaintiffs in Division I purchased stock in their own names.

In support of the Motion for Summary Judgment, the plaintiffs have stated as follows:

"1. The affidavits of the Plaintiffs establish that the Plaintiffs were at all times material to the matters alleged in the complaint residents of the State of Iowa.

2. The residency, nature of business or employment, and the relationship of the defendants among themselves as set forth in the complaint are either admitted by the defendants or not denied.

3. The offers and sales of the Audio Securities to the respective Plaintiffs by the respective defendants in the State of Iowa, all as alleged in Count II of the complaint, is established by the affidavits (including exhibits thereto, if any) of the Plaintiffs filed herein, by Paragraph 9 of the Defendants' answer, and by defendants' answers to Feit's interrogatories.

4. The agency of the defendants with respect to the sellers of the Audio Securities is established by the Plaintiffs' affidavits filed herein, by Paragraph 9 of the defendants' answer, by the affirmative allegations of the defendants in Paragraphs 2 and 5 of Count III of the third-party complaint, and by their answer to Interrogatory NO. 6(a) of the Feit interrogatories.

5. The non-registration of the Audio Securities under the Iowa Securities Law, Chapter 502, Code of Iowa, is admitted by the defendants at Paragraph 15 of their answer.

6. The tender of the Audio Securities by each of the Plaintiffs to each of the defendants who participated in the sale thereof to the respective Plaintiffs is established in the complaint, which tender has been kept in force to this date, and which tender is hereby renewed. To the extent that any of the Plaintiffs have physical custody of the stock cer-

---

1. "No securities, except securities exempt under section 502.4 or unless sold in any transaction exempt under section 502.5, shall be sold within this state unless such securities shall have been registered by notification or by qualification as provided in section 502.7."

2. "Every sale or contract for sale made in violation of any of the provisions of this chapter shall be voidable at the election of the purchaser and the person making such sale or contract for sale and every director,

officer, or agent of or for such seller who shall have personally participated in making such sales and at the time knew of such violations shall be jointly and severally liable to such purchaser in an action at law in any court of competent jurisdiction upon tender to the seller in person or in open court of the securities sold or of the contract made for the full amount paid by such purchaser, together with all taxable court costs and reasonable attorney's fees in any action or tender under this section; . . . ."

572

tificates, such certificates can be produced in open court as permitted by Section 502.23 of the Iowa Securities law, or, upon request by the defendants or the court, will be physically delivered to the Clerk of Court.

7. The election of the Plaintiffs to rescind the purchase of the Audio Securities has been stated in the complaint; and the receipt of no income by the Plaintiffs with respect to the Audio Securities while the holders thereof have been established by the affidavits filed herein."

The defendants do not deny that Ch. 502.23 of the Code of Iowa gives a right to rescind a purchase where securities are not registered. The defendants, however, claim first, that the Iowa Securities Act is not applicable to this particular transaction in that the parties stated in the purchase agreement that New York law would apply. The defendants' second defense is that there are certain exclusions from requirements for registration under the Iowa law which would exempt these securities from registration, (i. e. limited offering exemption, isolated transaction exemption, and corporate exemption.) Third, the defendants claim that this cause is not ripe for summary judgment in that there are material issues of fact which are not yet resolved as it relates to whether the Iowa law should apply to this transaction and material issues of fact as to whether the defendants are entitled to the exemptions which they have set forth. Fourth, the defendants assert that the plaintiffs have not made a proper tender of the securities to the seller to perfect their right to recision. Fifth, the defendants assert that Section 502.23 only applies to those persons who shall have personally participated in making the sale. Finally, the defendants assert that they did not have the requisite knowledge concerning this transaction to make themselves liable for an Iowa Securities Act violation.

This Court must determine whether it can decide as a matter of law the following questions: (1) Is this the type of transaction that would normally be governed by the Iowa Securities Act and was there a "sale" in Iowa? (2) If there was a sale in Iowa, did the parties waive the protections of the Iowa Securities Act, by providing in the sales contract the following:

"This agreement is being executed and delivered and the shares and the options are being delivered in the State of New York, and this agreement shall be construed in accordance with, and governed by the laws of such state."

(3) Are the defendants entitled to assert certain exemptions from the registration requirements of the Iowa Securities Act? (i. e. the limited offering exemption, the isolated transaction exemption, and the corporate exemption). (4) Have the plaintiffs made a proper tender of these securities to perfect their rights to recision of the sale pursuant to Ch. 502 of the Code of Iowa? (5) Have the defendants "personally participated in making such sales" so as to make them liable under Section 502.23 of the Code of Iowa? (6) Did the defendants have the requisite "knowledge" required by Section 502.23 of the Code of Iowa?

I.

The Court first addresses itself to the question of whether this was a sale contemplated and regulated by the Iowa Securities Act. The defendants in their resistance to the Motion for Summary Judgment argue that these securities were not sold or contracted to be sold in Iowa. Defendants state that solicitation of an Iowa resident for the sale of a security is not an act which permits recovery under Section 502.23. Defendants state that Section 502.23 speaks only in terms of a sale or contract for sale and that in the instant case there was no sale or contract for sale which occurred in Iowa.

In support of their assertions that this sale did not occur in Iowa, defendants state to the Court that the agreements for this purchase were signed by Audio Communications, Inc. and the other two sellers, Daspin and Jamieson, in New York. They further state that these securities were to be delivered and were delivered in the State of New York.

There were, however, significant contacts with Iowa relating to this sale of securities, which were unregistered in Iowa. All of the plaintiff-investors were Iowa residents. One of the defendants was an Iowa brokerage house. All of the plaintiff-investors were solicited in Iowa by the defendant-brokers. A purchase agreement was tendered by the defendants and signed by the plaintiffs in Iowa. The plaintiffs received their stock certificates in Iowa. Subsequently, the plaintiffs elected to rescind in Iowa.

■ Under a restricted view of the scope of the term "sale" as might be contemplated in the field of contracts or the U.C.C., the defendants might have a strong argument that this sale occurred in New York. In the present situation, however, the term "sale" is defined by the Iowa Securities Act. When examining the definition of the word "sale" in the Iowa Securities Act, it becomes clear that the assertion of the defendants that "solicitation of an Iowa resident for the sale of a security is not an act which permits recovery under Section 502.23" is simply not the case when agents of the issuer solicit these sales in Iowa. The Court concludes that solicitation of an offer to buy is included within the term "sale" in the Iowa Securities Act. Section 502.3(3) reads as follows:

> "The term 'sale' or 'sell' includes every contract of sale or, contract to sell, or disposition of, or attempt to dispose of, a security or interest in a security for value. Any security given or delivered with, or as a bonus on account of, any purchase of securities or any other thing is considered to constitute a part of the subject of the purchase and to have been offered and sold for value.
>
> The term 'offer' or 'offer to sell' includes every attempt or offer to dispose of, or solicitation of any offer to buy, a security or interest in a security for value . . ."

The words in this definition "or attempt to dispose of" clearly bring this solicitation within the definition of sale under the Iowa Securities Act.

The Seventh Circuit has reached a similar result in a case directly on point factually with this case, Green v. Weis, Voisin, Cannon, Inc., 479 F.2d 462, 465 (7th Cir. 1973). In the *Green* case the plaintiffs were residents of Chicago, Illinois. All except one of the plaintiffs were solicited for the sale of common stock of London Ben, Inc. in Illinois by Weis, Voisin, Cannon, Inc., the underwriter and agent for the sale of London Ben stock. Each of the plaintiffs accepted the offer to purchase by signing the investment letter and sending it with a payment to the Weis, Voisin offices in Chicago. Confirmations of these sales were issued and mailed to the plaintiffs in Illinois. The plaintiffs attempted to rescind these sales on the grounds that the securities were not registered, nor were they exempt from registration since the defendants failed to file a 4G report. The district court's decision that the sale of securities to these plaintiffs did not take place in Illinois but instead in New York, was premised upon the fact that after the checks and investment letters were signed in Chicago they were forwarded to New York and the confirmations and stock certificates were issued to the plaintiffs in New York. The district court concluded that the sales took place in New York even given the broadened definition of "sale" under the Illinois Security Act.

As in the present case the Seventh Circuit in *Green* had to determine whether the solicitation of sales in Illinois constituted a "sale" within the

meaning of the Illinois Securities Act. The Illinois statute is similar to Iowa's in that sale is defined to include "every disposition, or attempt to dispose, of a security for value." The Seventh Circuit in reversing the district court held that under this definition of "sale" a solicitation of sales would bring a transaction within the protections of the Illinois Securities Act. The Court in *Green* stated that to take a more narrow definition of "sale" would allow evasion of the provisions and protections of the Illinois Securities Act.

The Eighth Circuit in Kreis v. Mates Investment Fund, Inc., 473 F.2d 1308 (8th Cir. 1973), stated the proper approach to determine whether the Iowa Securities Act should apply to the sale of the Audio Securities in Iowa. In the *Kreis* case the plaintiff had made an offer to purchase shares of the Mates Investment Fund, Inc. on the basis of a glowing account thereof published in Barron's National Business and Financial Weekly. The plaintiff, a citizen and resident of Missouri, transmitted his offer to purchase and money for the purchase to the defendants, who had their principal place of business in New York. The Fund was registered to sell securities in New York, but it was not registered to sell securities in Missouri. Subsequently, the plaintiff became disenchanted with his purchase and instituted an action for recision on the ground that the Fund had not complied with the registration provisions of the Missouri Uniform Securities Act.

The Court was faced with the problem of determining whether there had been an acceptance of the offer to buy in Missouri so as to make the Missouri Uniform Securities Act applicable to this transaction. The defendants argued that they accepted the offer to buy in New York by accepting the check and issuing the securities in New York. The district court found that the acceptance occurred in New York and, thusly, the Missouri Uniform Securities Act did not apply. The Eighth Circuit Court, in reversing Judge Wangelin, held that orthodox contracts principles did not apply to this transaction and that the term "acceptance" was defined by the Missouri Uniform Securities Act. The statutory definition of acceptance was much broader than that found in orthodox contracts law.

In the case at hand the orthodox contracts definition of the term "sale" has been broadened by the Iowa Securities Act. As in *Kreis,* the statutory definition governs the applicability of the Iowa Securities Act to the sale of the Audio Securities.

This Court also concludes that Iowa's Securities Act and its protections for purchasers in Iowa could be evaded easily if solicitations could be made in Iowa and then the transaction consummated in another State. This Court believes that the Iowa Legislature provided a broad definition of "sale" in order to prevent evasion of the provisions and protections of the Iowa Securities Act. The solicitations by the defendants to the purchasers and plaintiffs were encompassed within the definition of "sale" in the Iowa Securities Act.

The fact that a portion of this transaction took place in New York is not sufficient to place this transaction outside of the provisions of the Iowa Securities Act. The undisputed fact that solicitations were made by the defendants in Iowa along with the other contacts with Iowa noted in this Memorandum are sufficient to hold that the Iowa Securities Act applied to this transaction as a matter of law.

## II.

The second question the Court addresses is whether the plaintiffs waived the protections of the Iowa Securities Act by the contract of sale. This contract of sale provided as follows:

"This agreement is being executed and delivered and the shares and the options are being delivered in the State of New York, and this agreement shall be construed in accordance

with, and governed by the laws of such State."

The question is whether this portion of the purchase agreement is a valid waiver of any rights or remedies the plaintiffs have under the Iowa Securities Act. Ordinarily, choice of laws provisions in contracts are valid except where they are contrary to State public policy. In the present case, we have a protective statute for purchasers of securities in the State of Iowa. This Court concludes as a matter of law that under the circumstances of this cause of action that the plaintiffs did not waive the protections of the Iowa Securities Act.

Although there is no Iowa case authority directly on point, the plaintiffs have cited the Court to authority from other jurisdictions and the Court has concluded its own research. In Foreman v. Holsman, 10 Ill.2d 551, 141 N.E.2d 31, 61 A.L.R.2d 1303 (1957), the Court held:

"To permit this remedy to be 'waived' or 'released' prior to or contemporaneously with the sale of unregistered securities would thwart the very objective of the statute and violate the declared public policy of this State. Such a holding would pave the way for the virtual nullification of this important legislative enactment. . . .

"This court has consistently held that the benefits of a statute may not be waived by an individual in cases where the statute was enacted for the protection of the public generally, . . . and we have often reiterated that a contract made in violation of established public policy will not be enforced."

Other cases are cited in 61 A.L.R.2d 1308 for the same proposition. These cases are from the jurisdictions of Michigan and Mississippi. See also Bartlett v. Doherty, 10 F.Supp. 465, 469 (D.N.H.1935); Bianco v. Superior Court, 265 Cal.App.2d 126, 71 Cal.Rptr. 322; Boehnen v. Walston & Co., Inc., 358 F.2d 537, cited by the United States District Court for the District of South Dakota on May 4, 1973; Allen v. Smith & Medford, Inc., 129 Ga.App. 538, 199 S.E.2d 876, decided July 12, 1973, by the Georgia Court of Appeals.

The defendants cite Lolkus v. Vander Wilt, 258 Iowa 1074, 141 N.W.2d 600 (1966) as the closest Iowa case on the point of whether a choice of laws provision such as involved in this case is invalid in a securities contract. In Lolkus, the defendants sold shares of the Quickie Iron Mining Company to Iowa purchasers. As noted by the Iowa Supreme Court the only thing quick about the mining company was the way in which the investors lost their money. After a suit was instituted by the Iowa Commissioner of Insurance, the defendants consented to offer an opportunity to the investors to rescind their purchases and recover their purchase money. The defendants then executed a waiver of their right to rescind the purchases under the terms of this consent decree. The Iowa Supreme Court ruled that whether the waivers could be asserted as a defense to recover by the plaintiffs depended upon whether the waivers were procured by fraud, misrepresentation or concealment. The defendants assert that the Lolkus case supports their position that there are circumstances under which waivers could be valid and be enforced, if they are not procured by fraud, misrepresentation or concealment. Under this standard, the defendants assert that the matter of waiver is a jury question that cannot be determined in a summary judgment motion.

The Court, however, does not find the factual situation in Lolkus to be on point with the present case. The waiver is not valid in the present case even if not procured by fraud, misrepresentation or concealment. The important distinction between the Lolkus case and the case at hand is that in Lolkus the right to rescind had *already* matured at the time that the waiver was signed. It was the relinquishment of an already existing right. The defendants in the

*Lolkus* case had agreed prior to the waiver to offer to refund to all residents of the State of Iowa the purchase price of the securities in the Quickie Iron Mining Co. It was a present obligation of the defendants to rescind or refund the purchase price which the plaintiffs agreed to waive. In the present case, however, the plaintiffs were asked to sign a contract which waived future possible remedies under the Iowa Securities Act. The plaintiffs could waive a right to recision that is presently in existence, if the waiver was not procured by fraud, but they cannot waive future prospective protections of the Iowa Securities Act at the time these securities are purchased. This Court believes that the Iowa Supreme Court would decide the same as this Court and the majority of other jurisdictions if they had been faced with a situation in *Lolkus* of a prospective waiver. Accordingly, this Court holds that the choice of law provision in the purchase agreement is not enforceable and that the Iowa Securities Act was applicable to the sale of these Audio Securities.

### III.

The third issue the Court addresses is whether the defendants are entitled to assert certain exemptions from the registration requirements of the Iowa Securities Act. The first exemption claimed by the defendants is the limited offering exemption under Section 502.5(15) of the Code of Iowa.

"The sale of securities other than fractional undivided interests in oil, gas or other mineral leases, rights or royalties, by the issuer thereof within any period of twelve consecutive months to not more than twenty persons, excluding, in determining such twenty persons, purchasers of securities exempt under section 502.4, purchasers of securities in transactions exempt under other subsections of this section and purchasers of securities which are part of an offering registered under this chapter 502, provided that (a) no commission or other remuneration is paid or given directly or indirectly for or on account of such sale, and (b) the issuer shall file with the commissioner of insurance a report of sale within thirty (30) days after such sale, setting forth the name and address of the issuer, the total amount of securities sold for which exemption is claimed under this subsection and the names and addresses of the purchasers thereof."

The plaintiffs assert that the defendants are not entitled to assert the limited offering exemption and that this matter can be determined as a matter of law. The first basis for the plaintiffs' claim is that these defendants may not claim this exemption because it is only available to issuers and the defendants are not the issuers. The Court concludes that in this instance these defendants should be able to claim any exemption which is available to the issuer. Both the defendants and the plaintiffs have alleged that the defendants were acting as agents of ACI and Daspin and Jamieson in the solicitation of purchasers for these securities. The Court finds that being agents of ACI and Daspin and Jamieson, the defendants are entitled to assert this defense, if it could be asserted by the issuer.

The plaintiffs next contend that defendants are foreclosed from this exemption because remuneration was paid on said sales. As noted above, Section 502.5(15)(a) provides that the exemption is not available where a commission or other remuneration is paid or given directly or indirectly for or on account of such sale. The defendant, R. G. Dickinson & Co., as disclosed by the preliminary prospectus, was to receive monies from ACI for financial consulting services. The defendants, however, assert that the financial consulting fees were not for or on account of the sales which are the subject of this lawsuit. Although counsel for the defendants in their resistance to the motion for summary judgment state that these financial consulting fees were payment for services other than the sale of these securities, no affidavits

to such fact have been submitted pursuant to the provisions of Rule 56(e) of the Federal Rules of Civil Procedure.

The Court could base its conclusion that the limited offering exemption did not apply on a finding that remuneration was received for this sale. The defendants have not properly refuted by affidavit pursuant to the provisions of Rule 56(e), the well supported assertions that financial consulting fees were received in connection with the sale of ACI securities. However, the Court chooses not to make such a finding.

The Court bases its conclusion that the limited offering exemption is not available to the defendants upon the failure to file a timely report of such sale with the Commissioner of Insurance pursuant to Section 502.5(15)(b) of the Code of Iowa.

There is no controversy between the parties as to whether a report was filed as required by the above noted Section of the Iowa Securities Act. The parties do disagree, however, as to the effect of the failure to file this report. The plaintiffs assert that the failure to file the report means that the defendants are not entitled to claim this limited offering exemption from the registration requirements. The defendants claim that the responsibility to file this report was with the issuer and that the issuer's failure to do so subjects the issuer to liability—not the defendants.

The Iowa Securities Act provides that the burden of proof is upon that party claiming an exemption to establish his entitlement to such an exemption.

"502.19  Burden of proof.

It will not be necessary to negative any of the exemptions in this chapter provided in any complaint, information, indictment or other writ or proceedings laid or brought under this chapter and the burden of proof of any such exemption shall be upon the party claiming the benefit of such exemption and any person claiming the right to register any securities by qualification under section 502.7 shall

also have the burden of proving the right so to register such securities."

The Court concludes that Dickinson cannot rely upon the issuer of these securities to file the notice claiming this exemption. This same issue was addressed by the Seventh Circuit Court of Appeals in the case of Green v. Weis, Voisin, Cannon, Inc., 479 F.2d 462, 466 (1973). That suit was pursuant to the Illinois Securities Act which provided, as does Iowa's, that the issuer shall file a report with the Secretary of State within thirty days of a sale to establish its right to claim an exemption from registration. The Court in *Green* stated:

"Weis, Voisin participated and aided in the sale to these plaintiffs and was in a position to insure that London Ben complied with the provisions of the Illinois Securities Act. It is therefore jointly liable for the failure of London Ben to file the 4G report."

As in the Illinois case, the defendants in this cause of action were in a position to assure that proper steps were taken to perfect their right to claim an exemption under 502.5(15) of the Code of Iowa. It is not a defense for the broker in this instance to disclaim liability because it was the duty of the issuer to file such report. As noted above, it is incumbent upon the defendants to show their right to claim an exemption under the Iowa Securities Act. In this case, it was also necessary for the defendants to assure that proper reports were filed to perfect their right to claim said exemption.

The Court concludes as a matter of law that the exemption pursuant to 502.5(15) of the Code of Iowa is not available to the defendants in this cause of action.

The defendants indicate to the Court that they intend to amend their Answer to include an additional exemption to registration, that being Section 502.5(3), the isolated transaction exemption. That Section provides:

"3.  An isolated transaction in which any security is sold, offered for sale,

subscription or delivery by the owner thereof, or by his representative for the owner's account, such sale or offer for sale, subscription or delivery not being made in the course of repeated and successive transactions of a like character by such owner, or on his account by such representative, and such owner or representative not being the underwriter of such security."

The defendants expressed their intent to amend their Answer in the resistance to the Motion for Summary Judgment by certain plaintiffs on Count II of the Complaint. The defendants' resistance was filed on March 12, 1973. The Court has perused the files in this matter and now determines that no amendment has been filed which inserts the "isolated transaction" defense. Even if the defendants had pled this defense, the Court doubts whether it could be supported under the circumstances of this case.

The defendants are correct in their assertion that the statute and regulations do not define the number of sales which constitute "repeated and successive transactions" such as to make the defendants ineligible for the isolated transaction exemption. There is, however, some guidance from other jurisdictions as to what should or should not be termed an isolated sale. The Minnesota Supreme Court in Anderson v. Mikel Drilling Co., 257 Minn. 487, 102 N.W.2d 293, 1 A.L.R.3rd 605 (1960) stated that more than one sale would be too much and would thus be a repeated and successive transaction.[3] Gales v. Weldon, 282 S.W.2d 522 (Mo.Sup.Ct.1955), held as a matter of law that the sale to the plaintiff in that cause of action was not an isolated transaction where five separate sales were made. The Court in *Gales* adopted the same view as did Kneeland v. Emerton, 280 Mass. 371, 388, 183 N.E. 155, 163, 87 A.L.R. 1, 14, that more than one sale made within a reasonable time as to indicate that one general purpose actuates the vendor and that the sales promote the same aim and are not so detached and separated as to form no part of a single plan, would be "repeated and successive transactions." In Nelson v. State, 355 P.2d 413 (Okla. Crim.1960), the Court held in a criminal case that "isolated sale" means one standing alone disconnected from any other. In State v. Ferguson, 249 Iowa 361, 86 N.W.2d 901, the issue of whether the isolated transactions exemption was available was submitted to a jury. This jury found that five or six sales in that case were sufficient to take the transaction outside the isolated transaction exemption.

A note in 78 Harv.L.R. 1635 (1965) at p. 1646, n. 70 reviews many cases which have addressed the question of isolated sales.[4] Many cases cited in 78 Harv.L.

3. ". . . One of the most frequently cited decisions interpreting exemption provisions such as found in our statute is Kneeland v. Emerton, 280 Mass. 371, 388, 183 N. E. 155, 163, 87 A.L.R. 1, 14:

'. . . The words "repeated and successive" are used by way of contrast to the word "isolated" employed earlier in the same sentence. In such context an "isolated" sale means one standing alone, disconnected from any other, and "repeated and successive" mean transactions undertaken and performed one after the other. We think that two sales of securities, made one after the other within a period of such reasonable time as to indicate that one general purpose actuates the vendor and that the sales promote the same aim and are not so detached and separated as

to form no part of a single plan, would be "repeated and successive transactions." ' "

4. "State v. Ferguson, 249 Iowa 361, 86 N. W.2d 901 (1957) (five or six sales a jury question); Elting v. Pickett, 190 Kan. 54, 372 P.2d 261 (1962) (four sales to same buyer isolated); Kneeland v. Emerton, 280 Mass. 371, 183 N.E. 155 (1932) (alternative holding) (two sales by broker not isolated); Ferar v. Hall, 330 Mich. 214, 47 N.W.2d 79 (1951) (twenty-two sales nonisolated as matter of law); Anderson v. Mikel Drilling Co., 257 Minn. 487, 102 N.W.2d 293 (1960) (distinguishing 'isolated sale' from 'public offering'); Virning v. Smith, 252 Minn. 363, 90 N.W.2d 241 (1958) (at least twelve sales nonisolated as matter of law); Gales v. Weldon, 282 S.W.2d 522 (Mo.1955) (five sales nonisolated as matter of law); Sisson

Rev. at 1646–7 involved either the same or fewer sales as were involved in the present cause of action and were held as a matter of law to be nonisolated transactions.

Seven contracts were executed for purchase of Audio Securities and over twenty investors were involved in these purchases. It is doubtful that if this defense had been pled by the defendants that they could qualify for the isolated transactions exemption.

■ The plaintiffs also raise the question as to whether this exemption would be available to issuers of securities. The plaintiffs contend that the isolated transaction exemption is only applicable to sales by its "owner." The Court concludes that the isolated transaction exemption is only available to owners of securities and not issuers by the plain language of the statute.

■ The third exemption claimed by the defendants is the exemption for transactions where the sale is to a corporation pursuant to Section 502.5(5) of the Code of Iowa.[5] The plaintiffs assert this exemption is not available to the defendants given that the solicitations, original purchase agreements, and exchange of money were in the name of A. U. D. investment partnership and B. & D. investment group—both of which were at the time of the solicitations unincorporated. At a later date, the purchase agreements were modified to reflect a sale to A. U. D., Inc. and Band Company, Inc. Stock certificates were also issued in the corporate names.

On the other hand, the defendants argue that even though the incorporation did not take place until some eleven or twelve days after the purchase agreements were first signed, the corporate exemption from registration can be claimed. Defendants argue that it is axiomatic that a group of individuals who have performed acts while not yet a corporation may, upon incorporation, ratify those previous acts if within the scope of corporate powers and the same become corporate acts.

The parties are not disputing the basic facts as to what transpired as it relates to the ultimate sale to these corporations, but they are arguing as to legal conclusions to be drawn therefrom. Individuals and partnerships were originally solicited to buy these securities. After they had signed a first purchase agreement in the name of the partnerships and had transferred the purchase money to the defendants, they formed corporations and re-executed the purchase agreements in the name of the corporations.

■ As stated in Lolkus v. Vander Wilt, *supra*, 141 N.W.2d at 604, "the purpose of the Blue Sky Law is to protect the public." An examination of all the exemptions provided in the Iowa Securities Act discloses an intention of the Iowa Legislature to exempt certain securities and specified transactions where the exemptions will not nullify the protections provided by the Act. The corporate exemption is another example of an exemption provided for sales to an investor who may not need the protections of the Iowa Securities Act. The question presented to this Court is whether the seller of securities can solicit purchasers for unregistered securities

---

v. State, 404 P.2d 55 (Okla.Crim.App.1964) (sale to more than ten persons nonisolated); Nelson v. State, 355 P.2d 413 (Okla.Crim. App.1960) (alternative holding) (repeated sales not isolated); Commonwealth v. Summons, 157 Pa.Super. 95, 41 A.2d 697 (1945) (twenty sales in fourteen months nonisolated as matter of law); Ersted v. Hobart Howry Co., 68 S.D. 111, 299 N.W. 66 (1941) (finding one sale isolated affirmed); Johnson v. Crail, 11 Utah 2d 392, 360 P.2d 485 (1961) (finding two sales isolated affirmed)."

5. "Except as hereinafter expressly provided, the provisions of this chapter shall not apply to the sale of any security in any of the following transactions:

. *      *      *      *      *

5. The sale, transfer, or delivery to any bank, savings institution, trust company, insurance company, or to any corporation or to any broker or dealer; provided that such broker or dealer is actually engaged in buying and selling securities as a business."

who are not corporations and then qualify this sale for the corporate exemption by later helping these investors to incorporate and consummating the sale in the name of the corporation.

■ As stated earlier in this Memorandum, a violation of the Iowa Securities Act occurs at the time unregistered securities which do not qualify for some type of exemption are offered for sale. This Court concludes that this violation of the Iowa Securities Act cannot be later cured when the investors are encouraged to form corporations to consummate the purchase of the securities. This later ratification of sale by the corporation does not cure the fact that there has been a violation of the Iowa Securities Act by the sale or solicitation for sale of unregistered securities.

### IV.

■ For further defense to plaintiffs' Count 2, the defendants deny that plaintiffs have ever made a proper or effective tender necessary to recision. Section 502.23 of the Code of Iowa provides for liability "upon tender to the seller in person or in open court of the securities sold . . .." The defendants claim that tender of the securities to the agent of the seller is not sufficient to perfect the right to recision under Section 502.23 of the Code of Iowa and that it is necessary to tender these securities to the sellers who were parties to the contracts.

Under the broad definition of "sale" in the Iowa Securities Act and in order to effectuate the remedies under Section 502.23, the Court concludes that a tender to the defendants in this cause of action is sufficient to establish a right to recision under Section 502.23 of the Code of Iowa. The defendants' agency relationship is admitted in their third-party complaint, in their answers to the Feit interrogatories, and in their brief in resistance to the Motion for Summary Judgment. The defendants were agents of the issuer of these securities at the time they solicited purchasers for these securities in Iowa. Section 502.23 makes sellers and agents of sellers liable for securities act violations. A violation of the Iowa Securities Act occurred when the defendants solicited buyers for unregistered securities in Iowa. A tender of these securities to the seller or to an agent of the seller is sufficient in this instance to perfect the right to recision.

### V.

Finally, in resistance to the Motion for Summary Judgment, the defendants allege that the plaintiffs have failed to show any entitlement to relief under 502.23 for the reason that this Section makes only those persons jointly and severally liable who (1) shall have personally participated in making such sales and (2) at the time knew of such violations. As noted before, there is no dispute about the fact that the defendants personally participated in making the sales of the Audio Securities. The defendants have admitted soliciting these buyers in Iowa.

■ A more serious question is whether the defendants had the requisite knowledge to make them liable for a violation of the Iowa Securities Act. In Lolkus v. Vander Wilt, supra, it was argued that the defendant must know that he was in violation of the Iowa Securities Act in order to be liable under Section 502.23 of the Code of Iowa. If it were necessary to establish that the defendants had actual knowledge that a violation was occurring, then the Court would be compelled to overrule the Motion for Summary Judgment since there is some dispute as to whether the defendants knew they were in violation of the Iowa Securities Act when they solicited these sales.

The Iowa Supreme Court in Lolkus v. Vander Wilt, supra, did not hold that the plaintiffs must meet this high standard of proof. The Iowa Supreme Court only held that defendants must have knowledge of what they were doing. The defendants admit that they were so-

liciting securities in Iowa and that these securities were not registered under the Iowa Securities Act. The defendants are not entitled to rely upon any representations of the third-party defendants that these securities were not covered by Iowa law or that even if covered by Iowa law, the securities were exempted from registration. Stated again, it was not necessary for the plaintiffs to prove that the defendants knew they were in violation of the Iowa Securities Act; it is only necessary to prove that the defendants had requisite knowledge of acts constituting the violation at the time of these solicitations for sale of the Audio Securities.

The Iowa Supreme Court in Lolkus v. Vander Wilt, *supra*, discussed the knowledge requirement of the Iowa Securities Act. The Iowa Supreme Court stated:

> "We construe the statute to require proof of knowledge of the facts, i. e. defendants' knowledge of what they were doing." 141 N.W.2d at 604.

The Iowa Supreme Court did not require a showing that the defendant had knowledge that a law was being violated, but only that the defendant had knowledge of the facts which gave rise to a violation of the law. In this case, it is admitted that the defendants were soliciting buyers for Audio Securities in Iowa and that the defendants knew these securities were not registered in Iowa. As stated by the Iowa Supreme Court "they are presumed to know the law. They had the knowledge required by the statute." *Lolkus* at 604. The Court doubts that the defendants can even claim as did the defendants in *Lolkus* that they were inexperienced in the field of security sales. This Court holds as a matter of law that the defendants had the requisite knowledge to sustain liability under the Iowa Securities Act.

## SUMMARY AND CONCLUSIONS.

This case involves plaintiffs who are Iowa investors who purchased unregistered securities in Iowa. The plaintiffs were solicited personally in Iowa by the defendant-brokers. Following these solicitations, the plaintiffs signed a purchase agreement and tendered the purchase money in Iowa. Subsequently, the plaintiffs received their stock certificates in Iowa.

The instant securities transaction is one which normally would be governed by the Iowa Securities Act. The Act defines "sale" broadly. The defendant-brokers' solicitations, which were made in Iowa, constituted a sale of securities within the meaning of the Act. Thus, the Court concludes that there was an unregistered sale of securities in Iowa.

The parties signed a purchase agreement. By its terms, the agreement provided that the instant transaction was to be governed by the laws of New York State. In effect, the defendants attempted to induce the plaintiffs to waive prospectively the protections provided by the Iowa Securities Act. The Court concludes that a prospective waiver of this type is void and unenforceable.

The defendants have claimed that they are entitled to assert the following exemptions: limited offerings (Code of Iowa, Section 502.5(15)); isolated transactions (Code of Iowa, Section 502.5(3)); and corporate sales (Code of Iowa, Section 502.5(5)). The Court concludes, however, that these exemptions are not applicable in the present cause of action.

The defendants are not entitled to assert the limited offerings exemption because they did not perfect their right to claim it by filing the required report with the Insurance Commissioner. Even if the defendants had filed this report, there is still a question as to whether they received remuneration from these sales. If the defendants had received remuneration then they would be ineligible for this exemption.

The defendants are not entitled to claim the isolated transactions exemption for two reasons. First, the defendants have not filed the appropriate amendment to their Answer to perfect their right to claim this exemption. Second, this Court feels that there were

582

sufficient sales to remove the instant transaction from the definition of an "isolated transaction."

The corporate sales exemption is not available to the defendants in this transaction because the securities violation first occurred before the corporations were formed. The later incorporation by the defendants did not cure the fact that a securities violation had already occurred.

The Court concludes that the plaintiffs made a proper tender of these securities to perfect their right to recision of sale pursuant to Section 502.23 of the Code of Iowa. The Court also concludes that the defendants personally participated in these sales and that the defendants had the requisite knowledge required by Section 502.23 of the Code of Iowa to make them liable for an Iowa Securities Act violation.

Upon tender of these securities to the defendants in open court, this Court will enter appropriate judgment for the plaintiffs against these defendants in accordance with the amount of securities originally purchased.

Although the Court is well aware of the pitfalls in the granting of summary judgments, there simply is no material issue of disputed fact in Count II of this lawsuit which prevents the granting of a summary judgment for the plaintiffs. The disputed factual matter raised by the defendants is not relevant to the determination of the legal conclusions in Count II of this lawsuit. It would be a waste of the Court's time to proceed to the same conclusions in full trial in this matter where the *relevant* factual material is now before the Court in these pleadings and the case can be determined as a matter of law.

Counsel for the plaintiffs should submit to this Court an appropriate form of judgment for this cause of action delineating the recovery for each of the plaintiffs and other relief prayed for.

It is hereby ordered that the Motion for Summary Judgment is sustained in its entirety.