Edna G. Meihsner, Plaintiff-Appellee, v. Delbert Runyon, d/b/a Delbert Runyon Oil Producers, Defendant-Appellant.
B. G. Finnegan, Plaintiff-Appellee, v. Delbert Runyon, d/b/a Delbert Runyon Oil Producers, Defendant-Appellant.

Gen. No. 11,286.

Second District, Second Division.

January 5, 1960.

Released for publication January 22, 1960.

Donovan D. McCarty and George E. Brazitis, of Olney, for defendant-appellant.

Brian and Wilson, of Toulon, and Robert A. Barnes, of Lacon, for plaintiffs-appellees.

JUSTICE WRIGHT delivered the opinion of the court.

This is an appeal from judgments entered in two cases by the Circuit Court of Marshall County against

the defendant, Delbert Runyon, d/b/a Runyon Oil Producers, in favor of the plaintiff, Edna G. Meihsner, in the sum of $2,225, and in favor of the plaintiff, B. G. Finnegan, in the sum of $750. The cases were consolidated for trial and are similar except for the amounts involved and were submitted to the court without a jury on stipulated facts.

The defendant, Delbert Runyon, d/b/a Runyon Oil Producers, during the years of 1952 and 1953 was engaged in the business of developing oil and gas leases with offices in Olney, Illinois. During 1952 and 1953, the defendant entered into four separate written transactions with the plaintiffs, three with Meihsner and one with Finnegan, in reference to developing undeveloped oil and gas leases that the defendant owned in Southern Illinois and Kentucky. The agreements were identical in form, differing only as to date, location of property, amount of interest and sums of money due. Each instrument was entitled Letter of Assignment. For reference, we quote one of these instruments in full:

"PLAINTIFFS' EXHIBIT I.

"LETTER OF ASSIGNMENT

"RE: McCloskey test unless oil is discovered at a lesser depth.

"KNOW ALL MEN BY THESE PRESENTS:

"That the undersigned, Delbert Runyon of Olney, Richland County, Illinois, hereinafter called 'assignor', in consideration of One and no/100 ($1.00) dollars, the receipt whereof is hereby acknowledged, does hereby sell unto Mrs. L. T. Meihsner of Henry, Illinois here-

448

inafter called 'assignee,' an undivided 1/64th interest in the 7/8th or working interest in the first oil and/or gas well to be drilled upon the location upon the following described real estate, to-wit:

The South One Half (S½) of the South East Quarter (SE¼) of the North East Quarter (NE¼) of Section Nine (9), Town Three (3) North, Range Ten (10) East of the Third P. M., containing Twenty (20) acres more or less.

"This assignment is subject to a 3/32nd of the 7/8th override.

"That the proposed well will be drilled on the communized acreage of the above described tract wherein Otto Hahan and etals of Olney, Illinois, and John Herman and etal of Olney, Illinois, are the owners of said real estate. That a unitization agreement has been made by the assignor and the Sun Drilling Company of Olney, Illinois, in order to comply with the State Law on twenty acre locations with the intentions of drilling for oil and/or gas, which is expected to be found in a line formation. If no well is commenced on or before the lease or lease extension expires the assignor will refund to the assignee the full amount paid for the said interest.

"Should oil or gas be produced in paying quantities from the well to be drilled in which the assignee herein named is a participant, then it will be necessary for the assignor, his heirs, agents, or assigns, to equip the well with casing, pumps, tanks, pipe lines, etc., and therefore it will be necessary for each owner, as their interests may show before the assignment, to contribute their pro rata part in this additional expense of equipping and marketing the production from this well.

"The assignee herein, as a participant in the drilling in the proposed oil, gas, or mineral well, will have to contribute his or her pro rata part of this additional expense of putting the producing well on production. The assignee will be notified by registered mail his or her estimated amount of the additional expense; that the assignee within the ten (10) days, will forward to the assignor, or his representative the amount due from the assignee or within the said period, notify the assignor or his representative that he or she, the assignee, does not desire to continue further as an associate in this adventure and will forfeit and surrender and assign his or her interest to the assignor for the purpose of reassignment to some individual, partnership or corporation, who will assume the obligation of the pro rata expense of equipping and marketing the production from said well.

"In the event that additional wells should be drilled, the assignor will notify the assignee of his intention to drill such a well or wells by registered mail. The assignee will forward to the assignor his or her pro rata share of the estimated cost in drilling such well within ten (10) days after such notification or surrender his or her interest in said well and any further drilling operation or producing of oil in said acreage.

"That when and if oil is discovered in paying quantities, the assignor will execute and deliver to the assignee, his heirs, or assigns, a good and sufficient further assignment for the participation as his or her interests may show from the proceeds of any production.

"The assignee, his heirs, or assigns, do hereby agree to all the above terms and conditions in accepting this

450

letter of assignment and paying the specified amount of this share.

"Dated this 29 day of Dec. 1952.

"DELBERT H. RUNYON
of Olney, Richland County, Illinois
"By Delbert Runyon
Delbert Runyon"

It appears that the defendant did in fact drill as required in the letters of assignment in each and every transaction herein under consideration; that where oil and gas was encountered in commercial quantities, an assignment of working interest of that oil and gas was executed as provided in the letter of assignment.

Defendant, previous to the issuance and sale of said letters of assignment, did not file any report of these transactions with the Security Department of the Secretary of State of Illinois and had no license from the State of Illinois to sell securities as provided in the Applicable Securities Act. It also appears that the plaintiffs elected to declare the sales null and void and made proper tender to defendant of the alleged securities sold and purchased by plaintiffs from defendant, together with quit claim deeds to each tract or tracts of land involved where oil wells were located, said tender being accompanied by a demand for the return to the plaintiffs of the purchase price of the letters of assignment.

By the complaints filed herein which were consolidated for trial, the plaintiffs sought to rescind the transactions and recover all money paid by them to defendant for letters of assignment. They alleged a violation of the Illinois Securities Act of 1919, as amended.

The sole question presented on this appeal is whether or not the instruments or interests are securities and

were sold in violation of the Illinois Statute. (Ill. Rev. Stat. 1951, Chap. 121½, Par. 97.) The applicable provisions of the Illinois Securities Law of 1919 are as follows:

"The word 'securities' shall mean . . . any oil, gas or mining lease, royalty, or deed, and interest, units or shares in any such lease, royalty, or deed, . . . 'sale' . . . shall include every disposition, or attempt to dispose, of a security or interest in a security for value. The term 'sale' means and includes contracts or agreements whereby securities are sold, traded or exchanged for money, property or thing of value, or any transfer or agreement to transfer in trust or otherwise." Ill. Rev. Stat. 1953, Chap. 121½, Par. 97.

"Every sale and contract of sale made in violation of any of the provisions of this Act shall be void at the election of the purchaser, and the seller of the securities so sold . . . shall be . . . liable, in an action at law or in equity, upon tender to the seller or in court of the securities sold, to the purchaser for the amount paid, the consideration given or the value thereof, together with his reasonable attorney's fees in any action brought for such recovery." Ill. Rev. Stat. 1951, Chap. 121½, Par. 132.

The plaintiffs contend that the letters of assignment issued and sold by the defendant to the plaintiffs were securities as defined by the Illinois Securities Act, while the defendant contends that the letters of assignment were contracts with each of the plaintiffs to develop the leased lands by drilling a test well for the discovery of oil or gas, and that said letters of assignment are not securities within the meaning of the Illinois Securities Act.

Three of these instruments were executed, sold and delivered to plaintiff, Meihsner, the consideration for two of them being $600 each and for the third one

452

$650. One instrument was sold to plaintiff, Finnegan, for a consideration of $600.

■ In determining whether a particular instrument is a security within the meaning of the statute, we must look to the substance of the transaction and the relationship between the parties, and these elements will control as against the form of the instrument. Securities and Exchange Commission v. Universal Service Association, 106 F2d 232.

When the entire instrument designated letter of assignment is considered, it appears to have for its purpose the promise on the part of the defendant to assign an undivided 1/64th interest in a 7/8th or working interest in the first oil and/or gas well to be drilled upon certain described real estate, and further to evidence an agreement by the defendant assignor to drill a well on the property described in the lease, and with the further provision that if oil or gas is found in commercial quantities the plaintiffs are further obligated to pay their pro rata share of the cost of placing the well on production.

■ ■■ It is significant that each of the instruments provide that if the additional amount to put the well on production in case oil or gas are found in paying quantities is not paid as provided, the plaintiffs are to assign their interest to the defendant assignor for the purpose of re-assignment. This certainly indicates that it was contemplated that the instruments conveyed to plaintiffs an interest and were not merely agreements providing for the plaintiffs to share in a part of the cost of drilling wells. The term security has been broadly construed by our courts as to afford the investing public a full measure of protection. Form has been disregarded for substance and emphasis placed on economic reality. A contract, transaction or scheme whereby one person invests his money

453

in a common enterprise on the theory that he expects to receive profits solely from the efforts of the promoter is a security within the meaning of the Securities Act. Sire Plan Portfolios, Inc. v. Carpentier, 8 Ill.App.2d 354, 132 N.E.2d 78.

The test is whether the scheme involves an investment of money in a common enterprise with profits to be derived solely from the efforts of others. The statutory policy of affording broad protection to investors is not thwarted by unrealistic and irrelevant formula. Securities and Exchange Commission v. W. J. Howey Co., 328 U. S. 293.

The first paragraph of the instruments here in question provides that for a consideration, the defendant does sell to the plaintiffs a working interest in an oil well to be drilled on certain described property on which defendant has a lease. The thing that gave to these instruments apparent value and induced their purchase was the hope of economic gain from oil development and not the burning desire to help pay the costs of drilling oil wells. Regardless of the form of the instrument or the nature of the interest sold, whether real or personal property, we must look to the substance of the transaction; and if the transaction is one which contemplates operation and management of the property sold by the seller and holds out to the purchaser an expectation of earnings and profits, it is a security within the meaning of the Act.

The defendant cites and relies principally on the case of Hammer v. Sanders, 8 Ill.2d 414, 134 N.E. 2d 509. To support his contention that the instruments in the case before us are not securities within the meaning of the Act, but on the contrary they are contracts to develop leased lands by drilling a test well for the discovery of oil or gas with each of the plaintiffs paying his or her proportionate share of the drilling costs.

454

The factual situation in Hammer v. Sanders, supra, is different from that in the instant case. In the Hammer case the instruments provided for the payment of one sum for a working interest and another sum to defray part of the cost of drilling a test well on a given lease, and the court found that the consideration for the working interest was never paid and that, therefore, there was no money to be recovered. The court further found that the plaintiff, Hammer, admitted that the amount which he paid was for drilling costs alone; and the court further found and determined that all sums paid by the plaintiff were used to defray drilling costs and that this was fully understood by all of the parties concerned.

In the instant case, one amount was paid for a working interest and the drilling costs and there is nothing in the record that indicates that the plaintiff understood that they were buying the instruments and paying their money merely for the privilege of participating in the costs of drilling oil wells, and there is no showing in the instant case that all of the money paid to the defendant by the plaintiffs was used for drilling costs as was found to be the situation in the Hammer case. The form of the instrument does not in any way change the economic relationship of the parties. The Supreme Court of the U. S. in Securities and Exchange Commission v. C. M. Joiner Leasing Corp., 320 U. S. 344, 64 S. Ct. 120, 88 L. Ed. 88, aptly stated:

"It is clear that an economic interest in this well-drilling undertaking was what brought into being the instruments that defendants were selling and gave to the instruments most of their value and all of their lure. The trading in these documents had all of the evils inherent in the securities transaction which it is the aim of the Securities Act to end."

■■■■■■■■■

The relationship between the parties is inescapable. The defendant, Runyon, held leases and financed the exploitation of the leasehold interest by obtaining from the plaintiffs drilling costs in exchange for a working interest. We do not believe this to be a mere joint venture. The instruments did not reserve for plaintiffs any control over the operation and there was no provision that they would share any further losses beyond their initial investment.

■ ■ The objective of the Illinois Securities Act is to protect innocent persons who may be induced to invest their money in speculative enterprises over which they have little or no control. The Act is paternalistic in character and should be liberally construed to better protect the public from deceit and prevent fraud in the sale of stock, bonds and other securities within the state.

■ ■ We conclude that the instruments here in question conveyed to the plaintiffs an interest in a common enterprise over which they had no control and from which they expected to receive earnings and profits solely from the efforts of the defendant, and that they are securities within the meaning and the purview of the Illinois Securities Act.

For the reasons herein stated, the judgment of the Circuit Court of Marshall County is affirmed.

Affirmed.

SOLFISBURG, P. J. and CROW, J., concur.