Jules R. GREEN et al., Plaintiffs-Appellants,

v.

WEIS, VOISIN, CANNON, INC., et al., Defendants-Appellees.

Henry A. MARKUS, Plaintiff-Appellant,

v.

WEIS, VOISIN, CANNON, INC., et al., Defendants-Appellees.

Nos. 72–1441, 72–1647.

United States Court of Appeals, Seventh Circuit.

Argued April 19, 1973.

Decided June 8, 1973.

William J. Scott, Atty. Gen., William P. Rosenthal, Harvey J. Barnett, Arthur W. Friedman, Chicago, Ill., for plaintiffs-appellants.

Gerald M. Newman, David L. Fisher, Stephen C. Shamberg, Chicago, Ill., for defendants-appellees.

Before MURRAH, Senior Circuit Judge,* and KILEY and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

This appeal is concerned primarily with the meaning of the words "sale" or "sell" in the Illinois Securities Act.

Plaintiffs appealed from grants of summary judgments for defendants in a diversity action seeking rescission of stock purchases because of the failure of defendants to comply with the registration requirements of the Illinois Securities Act. Ill.Rev.Stat., ch. 121½, §§ 137.1 et seq. The state of Illinois, which filed a brief as amicus curiae, also urged reversal on the ground that the trial court's construction of Illinois law would emasculate the protection accorded Illinois citizens by the Illinois Securities Act.

Each of the plaintiffs in No. 72–1441 purchased five thousand shares of the common stock of London Ben, Inc., in March, 1969. The purchase price for the stock in each case was $11,000. Defendants are London Ben and Weis, Voisin, Cannon, Inc., the underwriter and agent for the sale of the London Ben stock.

The facts surrounding these sales are not disputed. All of the plaintiffs are residents of Chicago, Illinois or its suburbs. Each of the plaintiffs, except Nathan Rosenstone, was solicited in Illinois by defendant Weis, Voisin in oral and written communications. Each of these plaintiffs received, in Chicago, an investment letter and selling circular of London Ben, offering to sell the stock of London Ben. The investment letter and selling circular were sent by Weis, Voisin from its Chicago offices. Each of the plaintiffs accepted the offer to purchase by signing the investment letter and sending it, with a check, to the Weis, Voisin offices in Chicago.

Plaintiff Rosenstone, also an Illinois resident, was solicited for London Ben stock in Florida, where he was on vacation, by means of a telephone call from Weis, Voisin in Chicago. Rosenstone stated at the time of the phone call that he was a resident of Chicago and this information was recorded by the Weis, Voisin representative. Rosenstone signed the investment letter while in Florida and mailed it to the Weis, Voisin Chicago office. The confirmation of the sale and stock certificates were delivered to Rosenstone's Chicago residence address.

Confirmations on each of these sales were issued and mailed to the plaintiffs at their Chicago addresses on April 11, 1969. In August and September, 1970, all of the plaintiffs elected to rescind their purchases of London Ben. Notice was given to the defendants of the decision in each case. Rescission was based on the grounds that the securities had been sold in violation of the Illinois Securities Act because they were not registered, nor were they exempted from registration inasmuch as the defendants failed to file a 4G report.

Section 137.12 of Ill.Rev.Stat., ch. 121½, states that it is a violation of Illinois law to "sell any security except in

* Senior Circuit Judge Alfred Murrah of the Tenth Circuit is sitting by designation.

accordance with the provisions of this Act" or to "fail to file with the Secretary of State any application, report or document required to be filed under the provisions of this Act . . . ." Section 137.13 provides that "every sale of a security made in violation of the provisions of this Act shall be voidable at the election of the purchaser." Upon tender to the seller of the securities,

> "the issuer, . . . underwriter, dealer or other person by or on behalf of whom said sale was made, and each underwriter, dealer or salesman who shall have participated or aided in any way in making such sale, . . . shall be jointly and severally liable to such purchaser for (1) the full amount paid, together with interest from the date of payment for the securities sold . . . less any income or other amounts received by such purchaser on such securities and (2) the reasonable fees of such purchaser's attorney incurred in any action brought for recovery of the amounts recoverable hereunder."

Sale or sell is defined in § 137.2–5 to "include every disposition, or attempt to dispose, of a security for value." Section 137.4(G) provides that the registration provisions of the Act (§§ 137.5–137.7) shall not apply to sales of securities to 25 persons or less if the issuer or dealer files a report of sale with the Secretary of State within 30 days of the sale including information as to the name and address of the issuer, whether the sale was for the direct or indirect benefit of that person, the total amount of securities sold under the section, the price at which they were sold, commissions, names and addresses of purchasers, and a statement that offers to sell such securities were not made to persons in excess of the number permitted under the section.

It is undisputed that the defendants in this case filed no reports with the Secretary of State. The district court nevertheless held that plaintiffs were not entitled to rescission under the Illinois Securities Act provisions summarized above, basing its decision on two grounds: First, that the sales had taken place in New York and not in Illinois; and second, that even if the sales were in Illinois, there would be no remedy because the remedial provisions of the Illinois Securities Act were "limited to rescinding sales made in violation of the Act, not validly consummated sales which the seller thereafter failed to report." The district court also held that if the statute were construed to cover the sales in question, constitutional difficulties would be presented.

The second ground for the district judge's decision, that the Illinois Securities Act would not provide a remedy for failure to file a 4G report even if the sale occurred in Illinois, was not argued by the defendants to that court and they expressly disclaimed any reliance on that ground at oral argument in this appeal, correctly noting that Mark v. McDonnell & Co., 447 F.2d 847 (7th Cir. 1971), holding that the failure to file a report enables a purchaser to rescind, precluded such a result.

The district court's decision finding that the sale of securities to these plaintiffs did not take place in Illinois is premised upon the fact that after plaintiffs' checks and investment letters were received in Chicago by Weis, Voisin, the checks were forwarded by the defendant to its New York offices and deposited in its New York bank account. The confirmations and stock certificates were also issued to the plaintiffs from New York. The district court concluded from these facts that the actual sale of securities took place in New York and that the broad definition of sale in § 137.2–5 was irrelevant since the "sale" plaintiffs were attempting to rescind was the completed sale which was only concluded when the defendants "accepted" plaintiffs' offer to buy in New York.

The term sale as defined in the Illinois Securities Act cannot be so limited. The language of the statute specifically encompasses the sale of London Ben

stock to these plaintiffs. Section 137.-2–5 provides:

> " 'Sale' or 'sell' shall have the full meaning of that term as applied by or accepted in courts of law or equity, and shall include every disposition, or attempt to dispose, of a security for value. 'Sale' or 'sell' shall also include a contract to sell, an exchange, an attempt or an offer to sell, an option of sale or a solicitation of an offer to buy, directly or indirectly; . . . ."

The defendants in this case offered to sell the securities in question in solicitations made to persons all but one of whom were in the state at the time of the solicitation, by representatives in Illinois, received acceptances of their offer in Illinois from persons all but one of whom were in Illinois at the time of the mailing of the acceptance, and mailed confirmations and stock certificates to Illinois residents at their Illinois addresses. Whether or not a common law definition of sale would therefore place the consummation of the sale in New York is therefore irrelevant to the statutory definition. Defendants became subject to the statute at least when they successfully completed the sale of London Ben stock after soliciting offers to buy in Illinois. To construe the language of the statute otherwise would permit an issuer or dealer to solicit sales at will in Illinois without complying with the statute, so long as an act entirely within the seller's control, such as placing the proceeds in a bank account or issuing stock certificates, was performed at or from some other place. Illinois residents should not be so helpless in obtaining protection through their own state legislature or dependent upon the possibility of aid from the laws of another state, particularly when they might be unable to even determine which state would be the state of sale at the time they accepted the offer to purchase.

The purpose of the Illinois Securities Act, as stated by the Illinois appellate courts, also clearly contemplates the sale to these plaintiffs. The Illinois Appellate Court specifically considered the scope of the statutory definition under consideration here in Silverman v. Chicago Ramada Inn, Inc., 63 Ill.App.2d 96, 211 N.E.2d 596, 599 (1965), stating:

> "This definition of a sale is in itself liberal. Its obvious purpose is to exclude nothing that could possibly be regarded as a sale. Under this broad and unambiguous definition every step toward the completion of a sale would be a sale. The words 'shall include every disposition * * * of a security for value' are themselves all-encompassing. . . .
>
> \* \* \* \* \* \*
>
> "The solicitation by the defendants constituted a sale under the statute as did the payments made by the plaintiffs in March and May 1959. The plaintiffs, if they had known that the securities were illegally sold, could have instituted their rescission action after the agreement to purchase was reached; they could have sued to recover after the first payment or after any one of the interim payments. All were sales under the Act and all were voidable at the option of the purchasers."

This interpretation of the word sale appears to be in accord with the general statement of the paternalistic purpose of the Act stated in Meihsner v. Runyon, 23 Ill.App.2d 446, 163 N.E.2d 236 (1960), and Foreman v. Holsman, 10 Ill. 2d 551, 141 N.E.2d 31 (1957) (interpreting the predecessor to the Illinois Securities Act of 1953). The court in *Meihsner, supra,* 23 Ill.App.2d 446, 163 N.E.2d at 241, stated that the purpose of the Illinois Securities Act was "to protect innocent persons who may be induced to invest their money in speculative enterprises over which they have little or no control. The Act is paternalistic in character and should be liberally construed to better protect the public from deceit and prevent fraud in the sale of . . . securities within the state."

The defendants argue, however, that since it is not the preliminary steps in the sale which plaintiffs seek to rescind, but the completed transaction, the above authorities are inapposite. The fallacy of this argument is that it attempts to impose a common law concept of sale upon the statutory definition. Neither the language nor the Illinois decisions permit such a construction. *Cf.*, Kreis v. Mates Investment Fund, Inc., 473 F.2d 1308, 1312–1313 (8th Cir. 1973). The broad paternalistic purposes of the Act can only be achieved through a literal reading of the statute. Inasmuch as all preliminary steps were taken in Illinois, the confirmations and stock certificates were delivered in Illinois to Illinois residents, and a sale was transacted in each case, the defendants were subject to the Illinois Securities Act and were required to submit a 4G report upon the completion of the sale.[1]

There is no constitutional infirmity in this construction. The Supreme Court long ago upheld the constitutionality of state blue sky laws in Hall v. Geiger-Jones Co., 242 U.S. 539, 37 S.Ct. 217, 61 L.Ed. 480 (1917); Caldwell v. Sioux Falls Stock Yards Co., 242 U.S. 559, 37 S.Ct. 224, 61 L.Ed. 493 (1917); and Merrick v. N. W. Halsey & Co., 242 U.S. 568, 37 S.Ct. 227, 61 L.Ed. 498 (1917). The Supreme Court has also upheld specifically the right of a state to regulate solicitations of its citizens by a corporation outside the state. Bothwell v. Buckbee, Mears Co., 275 U.S. 274, 48 S. Ct. 124, 72 L.Ed. 277 (1927).

The final question raised in this appeal relates to the imposition of liability on Weis, Voisin for the failure of London Ben to file the 4G report. Weis, Voisin points to the language in Ill.Rev. Stat., ch. 121½, § 137.4(G), providing that "the issuer, controlling person or dealer" shall file a report with the Secretary of State within 30 days of a sale. However, § 137.13 of the Act, giving a civil remedy of rescission for violations of the statute, states that "each underwriter, dealer or salesman who shall have participated or aided in any way in making such sale . . . shall be jointly and severally liable to such purchaser." Weis, Voisin participated and aided in the sale to these plaintiffs and was in a position to insure that London Ben complied with the provisions of the Illinois Securities Act. It is therefore jointly liable for the failure of London Ben to file the 4G report.

We reverse and remand with instructions to enter judgment rescinding the sale of stock in No. 72–1441, wherein the plaintiffs moved for summary judgment. Interest and attorneys' fees should also be awarded pursuant to Ill. Rev.Stat., ch. 121½, § 137.13. No. 72–1647 is reversed and remanded for proceedings consistent with this opinion.[2]

Reversed and remanded with directions.

---

1. Plaintiff Rosenstone received his solicitation while in Florida and accepted the offer to buy from that state. The fact that the defendants solicited him from Illinois, knew he was an Illinois resident, mailed his confirmations to his Illinois address and received his acceptance letter and check in Illinois nevertheless bring this sale within the reach of the Illinois Securities Act.

2. The plaintiff in No. 72–1647 has not yet moved for summary judgment. That appeal is therefore before us only on the granting of summary judgment for defendants.